Jesse L. **FRYE**, Appellant–Plaintiff,

v.

**TRUSTEES OF the RUMBLETOWN FREE METHODIST CHURCH,** Appellees–Defendants.

No. 63A01–9506–CV–170.

Court of Appeals of Indiana.

Nov. 21, 1995.

Rehearing Denied Jan. 31, 1996.

Robert J. Pigman, Berger and Berger, Evansville, for Appellant.

William H. Mullis, Fine & Hatfield, Evansville, for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Jesse L. Frye appeals from the trial court's grant of summary judgment in favor of the Trustees of the Rumbletown Free Methodist Church (the "Trustees"). Frye brought a negligence action against the Trustees for personal injuries that he sustained while on the premises of the church parsonage. The trial court determined there was no genuine issue of material fact for trial and entered summary judgment. Frye appeals.

We reverse.

### ISSUE

The sole issue presented for our review is whether Frye, as a stranded motorist seeking assistance, was an invitee, a licensee, or a trespasser when he entered the premises of the church parsonage.

### FACTS

The facts in the light most favorable to Frye indicate that on March 5, 1992, Frye was driving his car on State Highway 57 south of Petersburg when his car experienced engine difficulties. The car had stopped running on the highway shoulder near the Rumbletown Free Methodist Church and its parsonage. Frye left his car and approached the parsonage. He selected the parsonage because it was the residence nearest the point where his car had stopped. Frye entered the premises of the parsonage for his own convenience to use a telephone or to borrow a gasoline can.

While walking across the parsonage lawn, Frye looked around to see if he could find someone to ask for assistance. Finding no one outside, Frye walked up the concrete porch steps leading to the parsonage and knocked on the door. There was no response, and Frye decided to leave. As he descended the steps, the top step moved causing his foot to slide down between the steps and the porch. Frye fell approximately 20 to 30 inches to the ground and was injured. He then filed this negligence claim against the Trustees to recover damages for his injuries.

### DISCUSSION AND DECISION

#### Standard of Review

The purpose of summary judgment is to terminate causes of action which present no genuine issue as to any material fact and which may be determined as a matter of law. Ind.Trial Rule 56(C). In reviewing a trial court's ruling on a motion for summary judgment, the appellate court is required to employ the same standard as the trial court. *Farm Equip. Store, Inc. v. White Farm Equip. Co.* (1992), Ind.App., 596 N.E.2d 274, 275. We resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Terre Haute First Nat. Bank v. Pacific Employers Ins. Co.* (1993), Ind.App., 634 N.E.2d 1336, 1337. We must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. *Cloverleaf Apartments, Inc. v. Town of Eaton* (1994), Ind.App., 641 N.E.2d 665, 667. Summary judgment should not be entered where material facts conflict or where conflicting inferences are possible, even if the trial court believes that the non-moving party will not prevail at trial. *State Street Duffy's v. Loyd* (1993), Ind.App., 623 N.E.2d 1099, 1101, *trans. denied.* Summary judgment is rarely appropriate in negligence actions. *Barsz v. Max Shapiro, Inc.* (1992), Ind.App., 600 N.E.2d 151, 152. However, issues of duty are questions of law for the court and may be appropriate for disposition by summary judgment. *Brewster v. Rankins* (1992), Ind.App., 600 N.E.2d 154, 156.

### Genuine Issues of Material Fact

Frye contends that the trial court erred when it granted the Trustees' motion for summary judgment because genuine issues of material fact exist concerning the duty owed by the Trustees to Frye while he was on the parsonage premises. Frye claims he was a public invitee and that the Trustees owed a duty to protect him against harm. In support of his claim, Frye asserts that he entered the premises seeking aid and that churches are held open to the public for precisely that purpose, to provide aid to those in distress or in need. In the alternative, Frye contends that even if he was not a public invitee, he was at minimum a licensee, and the Trustees had a duty to warn him of any latent danger on the premises of which the Trustees had knowledge.

■ In a negligence action, the plaintiff must prove three elements: (1) a duty owed to the plaintiff, (2) a breach of that duty by the defendant, and (3) the breach proximately caused the plaintiff's damages. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995. Concerning the duty element, the status of a person entering the land of another determines the duty that the landowner or occupier owes to him. *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637, 639. The parties in the present case dispute Frye's status upon entering the parsonage premises. Therefore, we must determine Frye's status on the land in order to determine what duty the Trustees may have owed to him.

### Premises Liability

■ The status of a person entering the land of another is characterized as an invitee, a licensee, or a trespasser. *Id.; Johnson v. Pettigrew* (1992), Ind.App., 595 N.E.2d 747, 749, *trans. denied.* An Indiana landowner or occupier owes the highest duty of care to an invitee, that duty being to exercise reasonable care for the invitee's protection while he is on the landowner or occupier's premises. *Burrell,* 569 N.E.2d at 639; *Hammond v. Allegretti* (1974), 262 Ind. 82, 85, 311 N.E.2d 821, 825. Indiana landowners or occupiers owe a licensee the duty to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril.

*Burrell,* 569 N.E.2d at 639; *Barbre v. Indianapolis Water Co.* (1980), Ind.App., 400 N.E.2d 1142, 1146, *trans. denied.* This includes a duty to warn a licensee of any latent danger on the premises of which the landowner or occupier has knowledge. *Burrell,* 569 N.E.2d at 639; *Wright v. International Harvester Co.* (1988), Ind.App., 528 N.E.2d 837, 839, *trans. denied.* Finally, the duty owed to a trespasser is the duty merely to refrain from willfully or wantonly injuring the trespasser after discovering his presence. *Burrell,* 569 N.E.2d at 639; *Standard Oil Co. of Indiana v. Scoville* (1961), 132 Ind.App. 521, 524, 175 N.E.2d 711, 713, *trans. denied.*

### Invitee

■ An invitee may fall within one of three categories: public invitee, business visitor, or social guest, to each of whom the landowner owes a duty of reasonable care. *Burrell,* 569 N.E.2d at 642–43. Frye contends that he was a public invitee upon entering the parsonage premises and, hence, that the Trustees owed a duty of reasonable care to protect him from harm. We cannot agree.

■ In determining which entrants qualify as public invitees, the Indiana Supreme Court has adopted the Restatement (Second) of Torts § 332. *Id.* A public invitee is a person who is invited to enter or remain on another's land for a purpose for which the land is held open to the public. *Id.; St. Casimir Church v. Frankiewicz* (1990), Ind. App., 563 N.E.2d 1331, 1334; *Fleischer v. Hebrew Orthodox Congregation* (1987), Ind. App., 504 N.E.2d 320, 321, *trans. denied.*

■ Frye asserts he entered the parsonage premises in distress, seeking aid and, thus, that he was a public invitee because churches are generally recognized as being open for those seeking aid. We disagree with Frye's assertion on two accounts. First, Frye fails to make the necessary distinction between a church and its parsonage. Second, Frye's assertion erroneously relies on the assumption that churches are held open to the public for any need which may arise.

Frye was injured while on the steps of the parsonage. A parsonage is the private resi-

dence of the pastor provided by the church. In his brief, Frye describes his visit as one to the church. The record does not support that characterization. Frye specifically chose not to approach the church building and testified that instead he went to the parsonage because "it was a house." Record at 53. Frye stated further that "there were other houses not too far from there" but that he stopped at the parsonage because it "was the closest place" to ask for help. Record at 53. Frye sought out the nearest residence as a matter of convenience and not because the residence had any connection to a church. Nevertheless, Frye essentially maintains that all church property, including the parsonage, is recognized as being held open to persons who are in need. We cannot agree. While a parsonage is owned or provided by the church, it is equivalent to a private residence and is not held open to the public for roadside assistance.

Next, even if we were to accept Frye's contention that he was visiting the church, Frye's argument erroneously assumes that churches are generally recognized as being open to the public for every type of need. Contrary to Frye's contention, churches are held open to the public only for church-related matters. Church-related matters would reasonably include attending services, religious studies, church approved activities and counseling. *See St. Casimir Church,* 563 N.E.2d 1331; *Fleischer,* 504 N.E.2d 320.

The facts in the instant case are clearly distinguishable from those Indiana cases in which individuals visiting churches have been determined to be public invitees. In *St. Casimir Church,* the general public was invited to a Pulaski Day celebration sponsored by the Pulaski Club and approved by the Church. *St. Casimir Church,* 563 N.E.2d at 1332. The Church had announced the activity in the Church bulletin and had conducted a religious ceremony in connection with the celebration. *Id.* This court recognized a member of the general public who attended this ceremony as a public invitee. *Id.* at 1334. Here, Frye was not attending a church approved or advertised activity. Rather, he was on the parsonage premises in search of a telephone or a gasoline can.

This Court has similarly concluded that an individual who was injured while attending a scheduled synagogue service was a public invitee. *Fleischer,* 504 N.E.2d at 324. In *Fleischer,* the Rabbi of the Congregation encouraged all Jews to attend services at the synagogue. *Id.* Because the plaintiff visited the premises for the purpose of attending a service, we held that the Congregation owed the plaintiff a duty to use reasonable care to keep the synagogue safe for her. *Id.* Again, Frye was not on the premises to attend a religious service or any church-related activity.

In sum, we cannot accept Frye's unqualified assertion that all church property is held open the public to provide for those who may be in need. Frye did not enter the private premises of the parsonage for any purpose for which it is held open to the public. Further, churches are recognized as open to the public for church-related matters. Under these circumstances, we conclude that Frye was not a public invitee.

### Licensee/Trespasser

Frye next contends that if he was not a public invitee upon entering the parsonage premises, then he was a licensee. Therefore, he argues, the Trustees had a duty to warn him of any latent danger on the premises of which they had knowledge. We agree.

Licensees and trespassers are defined as those who enter the land of another for their own convenience, curiosity, or entertainment and take the premises as they find them. *Burrell,* 569 N.E.2d at 640; *Gaboury v. Ireland Rd. Grace Brethren* (1983), Ind., 446 N.E.2d 1310, 1314; *Barbre,* 400 N.E.2d at 1146. Unlike trespassers, however, licensees have a privilege to enter or remain on the land by virtue of the landowner's or occupier's permission or sufferance. *Burrell,* 569 N.E.2d at 640; *Standard Oil,* 132 Ind.App. at 524, 175 N.E.2d at 713. In noting this distinction, the supreme court in *Burrell* referred to the Restatement (Second) of Torts § 330. *Burrell,* 569 N.E.2d at 640.

Whether Frye should be considered a licensee or a trespasser depends upon whether he had a privilege to enter the parsonage premises. The Restatement (Second)

of Torts § 330, Comment H, provides that one who is on another's land for his own purposes and to whom the privilege of entering is extended as a personal favor, whether with express or tacit consent or as a matter of general or local custom, is a licensee. Frye did not have express or tacit permission to enter the land because while on the premises he was unable to locate anyone to give him that permission. The question remains whether Frye had a privilege to enter the land as a matter of general or local custom.

■ The issue of privilege to enter another's land implied by custom is one of first impression in Indiana. An explanation of licenses implied by custom is found in the Restatement (Second) of Torts § 330, Comment E:

The well established usages of a civilized and Christian community entitle everyone to assume that a possessor of land is willing to permit him to enter for certain purposes until a particular possessor expresses unwillingness to admit him. Thus a traveler who is overtaken by a violent storm or who has lost his way, is entitled to assume that there is no objection to his going to a neighboring house for shelter or direction.

As we have noted earlier, our supreme court has previously relied on the Restatement (Second) of Torts in resolving premises liability questions. *See Burrell*, 569 N.E.2d at 640–42.

Other jurisdictions have applied the Restatement (Second) of Torts § 330, Comment E, in deciding cases similar to the one at issue here. *See Romine v. Koehn* (1987), Mo.Ct.App., 730 S.W.2d 558, 559 (implied consent to enter land where plaintiff injured while planting defendant's crops out of neighborly good will while defendant was hospitalized); *Garrard v. McComas* (1982), 5 Ohio App.3d 179, 450 N.E.2d 730, 733 (genuine issue of material fact whether visitor who mistakenly approached defendant's home had license to enter premises implied by custom); *Hamby v. Haskins* (1982), 275 Ark. 385, 630 S.W.2d 37, 39 (plaintiff bitten by defendant's dog was licensee when stopped at defen-

dant's house to ask for directions). Like these other jurisdictions, we are persuaded by the common sense reasoning of § 330, Comment E, and we conclude that Indiana recognizes the privilege to enter another's land implied by custom.

■ In our society, it is a generally accepted custom for a motorist to approach a nearby residence and if lost to ask for directions, or if stranded to ask for the courtesy to use the telephone. This custom entitles one to assume that a landowner or occupier will allow a traveler to enter on land for certain limited purposes arising from an unanticipated need, such as to ask for directions or to use the telephone, unless the landowner or occupier indicates otherwise. Accordingly, we conclude Frye had an implied privilege to approach the parsonage in search of roadside assistance.

■ We hold that, as a matter of law, Frye was a licensee with a privilege implied by custom to enter the parsonage premises. Therefore, the Trustees owed Frye the duty to warn against any latent or hidden danger on the premises of which the Trustees had knowledge. This duty to warn is applicable to licensees but not to trespassers. *Burrell*, 569 N.E.2d at 639. It appears from the record that the trial court considered Frye a trespasser and applied the duty owed a trespasser when it entered summary judgment for the Trustees. However, because we have decided that Frye was a licensee, genuine issues of material fact remain regarding whether the parsonage steps constituted a latent or hidden danger and, if so, whether the Trustees had knowledge of such danger.

Reversed and remanded for further proceedings consistent with this opinion.

STATON and RILEY, JJ. concur.