**Nora May McCORMICK, Personal Representative of the Estate of Paul McCormick, deceased, Appellant–Plaintiff,**

v.

**STATE of Indiana, The DEPARTMENT OF NATURAL RESOURCES of The State of Indiana, and The Indianapolis Water Company, Appellees–Defendants.**

No. 49A02–9512–CV–714.

Court of Appeals of Indiana.

Dec. 10, 1996.

C. Warren Holland, Michael W. Holland, Holland & Holland, Indianapolis, for Appellant–Plaintiff.

Eric Brodt, Eric Brodt & Associates, Indianapolis, Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for Appellees–Defendants.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Nora May McCormick, Personal Representative of the Estate of Paul McCormick, deceased ("McCormick"), appeals from the trial court's grant of summary judgment in favor of the State of Indiana, its Department of Natural Resources ("the State") and the Indianapolis Water Company ("Water Company"). The decedent died in a boating incident at Morse Reservoir when he and his boat went over a spillway near the dam. The

Water Company owns the reservoir, and the State regulates various matters related to it. McCormick subsequently sued the Water Company and the State for the wrongful death of her husband. The Water Company moved for summary judgment on the grounds that Indiana's Recreational Use Statute provided immunity and, further, that it had no duty to post signs or warn persons about the spillway. The State moved for summary judgment on the basis that it did not owe the decedent a private duty and that, in any event, it was immune from tort liability. The trial court granted both motions and McCormick appeals from that decision.

We affirm.[1]

## ISSUES

McCormick presents two issues for our review which we restate as:

1. Whether the Water Company is immune from liability under the Indiana Recreational Use Statute ("IRUS").

2. Whether the State owed a private duty to the decedent.

## FACTS

The evidence most favorable to McCormick reveals that she was married to the decedent and that her son-in-law, Robert Wampler ("Wampler"), owned a motorboat which he allowed the decedent to use. Wampler paid a launch fee at the Marina on Morse Reservoir and the decedent had leased dock space at the Marina where the boat was kept. On June 9, 1990, the decedent took the boat out on the reservoir when the reservoir was at flood stage. He subsequently found himself near the spillway of the reservoir dam and was unable to start the motor of his boat. The decedent jumped from the boat just as it was going over the spillway and then attempted to swim to safety in the catch basin beneath the spillway.

A State Conservation Officer responded to a telephone call which reported a man over the spillway at the reservoir. Recovery attempts were made on June 9 and 10, but were discontinued due to the rough currents and rough surface water caused by flooding

conditions. On the day of the incident, the reservoir was at flood stage, winds were high and currents were fast. The water was treacherous, both above and below the spillway, and the water below the spillway was turbulent, deep, and extended over a much wider area than normal. The decedent's body was recovered on June 11, 1990, in the shallow water of Cicero Creek.

## DISCUSSION AND DECISION

### Standard of Review

In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard applied by the trial court. *Wells v. Hickman*, 657 N.E.2d 172, 175 (Ind.Ct.App.1995). The purpose of summary judgment is to terminate causes of action which present no genuine issue as to any material fact and which may be determined as a matter of law. Ind. Trial Rule 56(C). We resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Terre Haute First Nat'l Bank v. Pacific Employers Ins. Co.*, 634 N.E.2d 1336, 1337 (Ind.Ct.App.1993). Summary judgment is rarely appropriate in negligence actions. *Barsz v. Max Shapiro, Inc.*, 600 N.E.2d 151, 152 (Ind.Ct.App.1992). However, issues of duty are questions of law for the court and may be appropriate for disposition by summary judgment. *Brewster v. Rankins*, 600 N.E.2d 154, 156 (Ind.Ct.App.1992).

### Issue One: The Water Company

The first issue presented is whether the IRUS shields the Water Company from liability. At the time of the incident, the IRUS provided:

*Any person who goes upon or through the premises including, but not as limitation,* lands, caves, *waters,* and private ways of another with or without permission to hunt, fish, swim, trap, camp, hike, sightsee, or for any other purposes, *without the payment of monetary consideration, or with the payment of monetary consideration directly or indirectly on his behalf*

---

1. This court heard oral argument on October 31, 1996.

*by an agency of the state or federal government, is not thereby entitled to any assurance that the premises are safe for such purpose. The owner of such premises does not assume responsibility for nor incur liability for any injury to person or property caused by an act or failure to act. of other persons using such premises. The provisions of this section shall not be construed as affecting the existing case law of Indiana on liability of owners or possessors of premises with respect to business invitees in commercial establishments nor to invited guests* nor shall this section be construed as to affect the attractive nuisance doctrine. Nothing in this section contained shall excuse the owner or occupant of premises from liability for injury to persons or property caused by the malicious or illegal acts of the owner or occupant.

IND. CODE § 14–2–6–3 (repealed 1995) (emphasis added).[2] This statute denies certain persons legal recourse for personal injury or property damage and, thus, is in derogation of the common law and must be strictly construed against limiting a claimant's right to bring suit. *Drake v. Mitchell Community Sch.,* 649 N.E.2d 1027, 1029 (Ind.1995). Absent express declaration or unmistakable implication, statutes will not be interpreted as changing the common law. *Id.*

### A. Application of the IRUS to "Public Water"

First, McCormick contends that the IRUS does not apply to a reservoir which has been declared, by regulation, to be a "public water" of the State of Indiana. Specifically, McCormick argues that public water must be held open to the public and, thus, that the purpose of the IRUS is not served by applying it to such water. We disagree.[3]

The IRUS protects landowners from liability if they have opened their property to the public for recreational use. As a general rule, the recreational use statute applies if a landowner in lawful possession and control of lands allows the public to use them for recreational purposes without charging a fee. Here, the Water Company owns Morse Reservoir, the water in the reservoir, the land under the water, the dam and the spillway. Record at 89. McCormick seeks to hold the Water Company liable for an incident which occurred on property it owned but held open to the public for recreational use, and as we will discuss, the Water Company did not charge a fee. The statute was designed to apply in these circumstances.

We find no merit to McCormick's contention that the IRUS does not apply because Morse Reservoir had been declared a "public water." A "public water" is defined as "every lake, river, stream, canal, ditch and body of water that is subject to the jurisdiction of the state of Indiana, or owned or controlled by a public utility." IND. CODE § 14–1–1–1. Pursuant to Indiana Administrative Code, title 310, rule 2–29–1, Morse Reservoir is a "public water." The Administrative Code provides:

> Morse Reservoir in Hamilton county is a public water of the State of Indiana. The intensive and diverse uses made on the reservoir create unusual conditions and hazards for the safe operation of watercraft. Morse Reservoir is made subject to the provisions of 310 I.A.C. 2–2.

310 I.A.C. 2–29–1. The purpose for enacting the IRUS was to encourage landowners to open their property to the public for recreational purposes free of charge. *Kelly v. Ladywood Apartments,* 622 N.E.2d 1044, 1047 (Ind.Ct.App.1993), *trans. denied.*

McCormick does not direct this court to, and we cannot locate, any law which would require the Water Company to hold Morse

---

**2.** Indiana Code § 14–2–6–3 has been recodified as Indiana Code § 14–22–10–2.

**3.** The Water Company asserts· that *Barbre v. Indianapolis Water Co.,* 400 N.E.2d 1142 (Ind.App. 1980), *trans. denied.,* is precedent which establishes that each user of Morse Reservoir is, at most, a licensee. Here, the Water Company argues that it owed the decedent, as a licensee, a duty only to refrain from willfully or wantonly injuring him or acting in a way which would increase his peril, and that it did not breach that duty. Because we conclude that the IRUS applies to the facts of this case, we need not address this argument.

Reservoir open to the public. By declaring Morse Reservoir a public water, the Department of Natural Resources is able to regulate the operation of watercraft on the reservoir. Although the Department of Natural Resources regulates activities on Morse Reservoir, the Department cannot require the Water Company to hold the reservoir open to the public as it could amount to a confiscation or taking of the property. *See generally, Public Serv. Comm'n v. Indiana Bell Tel. Co.*, 235 Ind. 1, 31–32, 130 N.E.2d 467, 481 (1955) (Public Service Commission cannot require phone company to furnish telephone service to the public without just and reasonable compensation, nor can it enforce an order which results in a piecemeal confiscation of private property for public use).

Still, McCormick argues that the Water Company is a public utility and as such, its property must be held open to the public. A public utility is defined in part as, "every corporation ... that may own, operate, manage, or control any plant ... for the ... production, transmission, delivery, or furnishing of ... water. The term does not include a municipality that may acquire, own, or operate any of the foregoing facilities." IND. CODE § 8–1–2–1(a). The Water Company is a public utility which is a wholly owned subsidiary of IWC Resources Corporation, an investor owned, publicly traded corporation. Record at 218. The property owned by the Water Company is private property. The fact that the Water Company is also a public utility does not make that property public property.

█ As a landowner, the Water Company could close the reservoir. The IRUS was enacted, in part, to reduce the tendency of landowners from *withdrawing* land from recreational access. *Kelly*, 622 N.E.2d at 1046. The IRUS applies in this case because Morse Reservoir is privately owned property which is held open to the public for recreational use, free of charge. For purposes of the statute, it is of no consequence that the reservoir has been declared a "public water" and is regulated by the Department of Natural Resources. *See Gaeta v. Seattle City Light*, 54 Wash.App. 603, 774 P.2d 1255 (1989) (landowner compelled by Government to hold area open to public; court held recreational use statute applied because landowner held property open to public for recreational use without charging fee). McCormick has failed to show error on this issue.

## B. Application of IRUS to a Restricted Area

█ McCormick contends that even if the IRUS applies to Morse Reservoir, it should not apply in this case. McCormick argues that since the purpose of IRUS is to encourage landowners to open their property to the public for recreational purposes, the statute should not apply in this case because the spillway is a restricted area. We disagree.[4]

█ The IRUS protects landowners from liability for injury to a person who goes upon waters "with or without permission." I.C. § 14–2–6–3. In accordance with Indiana regulations, buoys marked "No Boating Zone" were placed within three hundred feet of the spillway. *See* 310 I.A.C. 2–2–1(A). A person who passes the buoys, into the spillway, is using that portion of the lake "without permission." Although this area is not intended for recreational use, a landowner should not be denied protection of the statute merely because he posted a sign which prohibits the use of a particular area.

Still, McCormick contends that this case is analogous to *Pulis v. T.H. Kinsella, Inc.*, 156 Misc.2d 499, 593 N.Y.S.2d 959 (1993), *aff'd*, 204 A.D.2d 976, 614 N.Y.S.2d 949 (1994).[5] In

---

4. McCormick further argues that the IRUS does not apply because the injury was not caused "by an act or failure to act of other persons using such premises." *See* IND. CODE § 14–2–6–3. However, McCormick fails to recognize that the statute also applies to any injury caused by the condition of the land. *See* IND. CODE § 14–2–6–3; *Schwartz v. Zent*, 448 N.E.2d 38 (Ind.Ct. App.1983) (first sentence of statute relates to injuries caused by condition of land), *trans. denied*. Here, the decedent's injuries were caused by the spillway, which is a condition of the land.

5. McCormick also argues that this case is like *Georgia Power Co. v. McGruder*, 229 Ga. 811, 194 S.E.2d 440 (1972). In *McGruder*, a boy drowned in a pool located below the Power Company's dam and power plant on a lake. *McGruder*, 229

*Pulis*, a driver of an all-terrain vehicle was injured when he ran into a cable that was stretched across an entrance to a gravel pit. The gravel pit constituted only a small portion of the property which was otherwise appropriate for recreational use. The court concluded that the recreational use statute did not apply because it was intended to apply only to property which is suitable and appropriate for recreational purposes, and the gravel pit was not suitable for such use. *Id.*, 593 N.Y.S.2d at 961.

The facts in *Pulis* are easily distinguished from the facts in this case. In *Pulis*, there were two separate areas of land. One which was appropriate for recreational use and was wooded and undeveloped. The other, smaller area, held a gravel pit which made it inappropriate for recreational activities. These two areas of land were readily distinguishable from each other and were easily segregable. Accordingly, it was logical not to apply the recreational use statute to that land which should not be held open to the public.

Unlike the two areas of land in *Pulis*, the spillway cannot be separated from the rest of the reservoir. The reservoir is one body of water and the spillway is part of it. If we were to conclude that the IRUS did not apply to the spillway, the only feasible alternative available to the Water Company would be to close the reservoir. That would defeat the purpose of the IRUS, which is to encourage landowners to open lands to the public as well as to keep the property open to the public for recreational use. Thus, we conclude that the IRUS applies to all of Morse Reservoir, including the spillway.

Ga. 811, 812, 194 S.E.2d 440, 440. The court held that the recreational use statute did not apply where the use of the land was expressly denied to the boy by the posting of "keep out" signs in the area. *Id.* The Georgia recreational use statute limited liability of an owner of land who "directly or indirectly invites or permits without charge any person to use such property for recreational purposes." *Id.* Unlike the Georgia statute which does not apply to property used "without permission," the IRUS applies whenever a person uses the land "with or without permission." IND. CODE § 14–2–6–3. Therefore, the language of the statute itself dictates a different outcome from the one in the *McGruder* case.

## C. Monetary Consideration

Next, McCormick claims that IRUS would not provide immunity to the Water Company because monetary consideration was paid for the use of the reservoir. Again, we cannot agree.

The IRUS requires that the person go "upon or through the premises ... without the payment of monetary consideration...." It is not disputed that at the time that the boat was placed in the reservoir, the decedent paid a launch fee to Morse Lake Marina. Record at 123–24, 165. It is undisputed that a rental fee had also been paid to the Marina for the use of a dock on the reservoir. Record at 165. Although the Water Company granted a license to Marina Limited Partnership to operate a private concession marina on the reservoir, the Water Company did not receive any rent or fees derived from issuance of the license. Record at 89, 218.

Taking all facts in a light most favorable to McCormick, it is apparent that no monetary consideration was paid for use of the reservoir. Fees were paid to the Morse Lake Marina for the convenience of having a place to dock and launch the boat. Additionally, the boat dock and launch ramp at the Marina were not the only available means of access to the reservoir. Property owners whose land abuts the reservoir could launch boats from their own property without a fee. Therefore, we find that McCormick did not pay a fee for use of the reservoir.[6]

Still, McCormick argues that *Reed v. United States of America*, 604 F.Supp. 1253 (N.D.Ind.1984) stands for the proposition

6. Other jurisdictions have reached similar results in cases in which they had to decide if monetary consideration was paid in order for the recreational use statute to apply. Where a fee was charged to rent an innertube to go sledding, the fee was found not to have been for the recreational use of the land on which the injury occurred. *See Jones v. United States*, 693 F.2d 1299 (9th Cir.1982). Where license fees were charged to boat and seaplane charter operators for transportation to a national monument, the entry and use of which was free of charge, the fees were not "charges" for purposes of the Florida recreational use statute. *See Zuk v. United States*, 698 F.Supp. 1577 (S.D.Fla.1988).

that a launch fee is monetary consideration. The court in *Reed* stated in a footnote:

> [I]t could very well be that the payment of $5.00 for a boat launch permit by Waldron and/or Collins [the boat owners] constituted "monetary consideration" so as to take the present case out of the purview of I.C. 14–2–6–3.

*Id.* at 1259 n. 2. The court noted that "a genuine issue of fact exists as to whether or not the $5.00 may have been paid on plaintiff's behalf" and that "it is not clear that the defendant would be entitled to judgment as a matter of law." *Id.* However, *Reed* is not dispositive. As previously stated, the facts here indicate that the fees were not paid for use of the reservoir but for the convenience of docking and launching the boat.

### D. Public Invitee and Duty of Reasonable Care

McCormick also contends that the decedent was a public invitee of the Water Company at the time of the incident and, thus, that the IRUS does not apply. The Water Company counters that the decedent was a licensee and that the IRUS operates to bar McCormick's claim.

■ The status of a person who enters the land of another is characterized as an invitee, a licensee, or a trespasser. *Frye v. Rumbletown Free Methodist Church*, 657 N.E.2d 745, 748 (Ind.Ct.App.1995). An Indiana landowner or occupier owes the highest duty of care to an invitee, the duty to exercise reasonable care for the invitee's protection while he is on the premises. *Id.* Indiana landowners or occupiers owe a licensee the duty to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril, which includes a duty to warn a licensee of any latent danger on the premises of which the landowner or occupier has knowledge. *Id.* Finally, the duty owed to a trespasser is merely to refrain from willfully or wantonly injuring the trespasser after having discovered his presence. *Id.*

■ In Indiana, those persons described in the Restatement (Second) of Torts § 332 qualify as invitees. *Burrell v. Meads,* 569 N.E.2d 637, 642 (Ind.1991). The restatement provides:

> (1) An invitee is either a public invitee or a business visitor.
>
> (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose which the land is held open to the public.
>
> (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

Restatement (Second) of Torts § 332; *Burrell,* 569 N.E.2d at 642. Licensees have a license to use the land and are privileged to enter or remain on the land by virtue of the permission or sufferance of the owner or occupier. *Id.* at 640 (citing Restatement (Second) of Torts § 330, cmt. c, (possessor's consent)). Licensees enter the land of another for their own convenience, curiosity, or entertainment and take the premises as they find them. *Id.*

■ A public invitee is a person who is *invited* to enter or remain on another's land for a purpose for which the land is held open to the public but a licensee is privileged to enter or remain on the land by virtue of *permission* or sufferance. *Frye,* 657 N.E.2d at 748 (referring to Restatement (Second) of Torts §§ 330 and 332) (emphasis added). Thus, in the determination of whether an individual is a public invitee or a licensee, the distinction between the terms "invitation" and "permission" becomes critical. The comments to Restatement (Second) of Torts § 330 provide that:

> c. *Consent and toleration.* The word "consent," or "permission," indicates that the possessor is in fact willing that the other shall enter or remain on the land, or that his conduct is such as to give the other reason to believe that he is willing that he shall enter, if he desires to do so.

The comments to Restatement (Second) of Torts § 332 clarify the distinction between invitation and permission:

> b. *Invitation and permission.* Although invitation does not in itself establish the status of an invitee, it is essential to it. An

invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so.

\* \* \* \* \* \*

Mere permission, as distinguished from invitation, is sufficient to make the visitor a licensee, as stated in § 330; but it does not make him an invitee. . . .

The comments to the same section of the Restatement clarify what is meant by land held open to the public for purposes of the public invitee:

> d. *Land held open to the public.* Where land is held open to the public, there is an invitation to the public to enter for the purpose for which it is held open. Any member of the public who enters for that purpose is an invitee . . .
>
> \* \* \* \* \* \*
>
> It is not enough, to hold land open to the public, that the public at large, or any considerable number of persons, are permitted to enter at will upon the land for their own purposes. *As in other instances of invitation, there must be some inducement or encouragement to enter, some conduct indicating that the premises are provided and intended for public entry and use, and that the public will not merely be tolerated, but is expected and desired to come.* When a landowner tacitly permits the boys of the town to play ball on his vacant lot they are licensees only; but if he installs playground equipment and posts a sign saying that the lot is open free to all children, there is then a public invitation, and those who enter in response to it are invitees.

Restatement (Second) of Torts § 332 (emphasis added). The decisive factor with regard to whether the possessor has extended an "invitation" or "permission" is the interpretation which a reasonable man would put upon the possessor's words and actions given all of the surrounding circumstances. *See* Restatement (Second) of Torts § 330, cmt. e; Restatement (Second) of Torts § 332, cmt. c.

■ Construing the evidence in the light most favorable to the decedent, no reasonable person could conclude that the Water Company extended an invitation to the decedent to use Morse Reservoir. The evidence supports the inference that the Water Company was, in fact, willing that the decedent and others enter and remain upon the reservoir or that the Water Company, at least, gave the decedent reason to believe that the Water Company was willing that he enter upon his own desire to do so. However, McCormick has produced no evidence from which one could reasonably conclude that the Water Company desired, induced, encouraged or expected the decedent to enter the reservoir. In other words, the evidence most favorable to the decedent establishes that the Water Company merely gave the decedent permission to enter the reservoir and not that the Water Company issued him an invitation for that purpose. The mere permission of the Water Company makes the decedent a licensee but does not make him an invitee, public or otherwise.

### Issue Two: The State of Indiana

McCormick also claims that the trial court erred when it granted summary judgment in favor of the State. Specifically, she contends that the State owed the decedent a duty because it failed to fulfill the requirements of certain statutes and rules which govern the safety of persons who boat on public waters. We disagree.[7]

■ To recover damages, McCormick must establish three elements of actionable negligence: (1) a duty owed by the defendant to conform its conduct to a standard of care necessitated by its relationship with the decedent; (2) a breach of that duty; and (3) an injury proximately caused by the breach. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind. 1991). The existence of a duty is a question of law for the court. *Mullin v. Municipal*

7. Because in the present case the duty element of negligence is absent, we need not consider whether the State is immune from tort liability.

*City of South Bend,* 639 N.E.2d 278, 283 (Ind.1994). Where a plaintiff seeks recovery against a governmental entity, the relationship between the parties must be one that gives rise to a private duty owed to a particular individual. *Id.*

When the government's duty is one owed to the public at large, there is no governmental liability for negligence. *Id.* For McCormick to have standing to recover in a lawsuit against a governmental entity, there must have been a breach of duty owed to a private individual. *Greathouse v. Armstrong,* 616 N.E.2d 364, 368 (Ind.1993). Generally, to be private, a duty must be particularized to an individual. *Id.* Our supreme court has identified the elements required for the imposition of a private duty on governmental defendants:

> (1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party;
> (2) knowledge on the part of the municipality that inaction could lead to harm;
> (3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking.

*Id.* at 284.

McCormick has produced no evidence which supports the inference that the State knew of the presence of the decedent on Morse Reservoir or that it knew of his peril at the time. At best, the State knew that the rough, high, and fast winds and waters on the reservoir posed a potential risk to the general public. There is no evidence that the State made assurances it would act on the decedent's behalf. Without any such assurance, there can be no reliance. McCormick has produced no evidence of a special duty or relationship between the decedent and the State. If the State owed any duty, it was a duty to the general public, not to the individual decedent. No genuine issue of material fact exists on the issue of duty, and the trial court properly granted summary judgment in favor of the State.

Further, we disagree with McCormick's contention that the public/private duty analysis does not apply to this case. It is her position that this analysis is inapplicable because the State's duty is a statutory and regulatory duty and does not involve a "general allegation of negligence by a governmental entity." Brief of Appellant at 36. In *Henshilwood v. Hendricks County,* 653 N.E.2d 1062 (Ind.Ct.App.1995), *trans. denied,* this court concluded that the public/private duty analysis does not apply to an alleged affirmative act of negligence where the entity itself has created the plaintiff's perilous situation. *Id.* at 1067. The *Mullin* test applies only in determining whether a duty is owed based on a governmental entity's alleged failure to act. *Id.*

McCormick's allegations against the State are based upon its failure to act. McCormick averred in her complaint that:

> The negligence of the Defendants, and each of them, includes but is no necessarily limited to: Failure to adequately warn of the dangers existing on or about June 9, 1990; failing to adequately patrol the premises; failing to remedy a dangerous situation; failing to recommend appropriate steps to prevent incidents involving the spillway; failing to adopt measures reasonably calculated to prevent an accident and/or death resulting from encounters with the spillway; failing to take appropriate steps to prevent inadvertent passage over the spillway; failure to appropriately limit access.

Record at 7. Each of these allegations asserts that the defendants failed to act. None alleges an affirmative act of negligence on the part of the State. Moreover, the public policy rationale underlying the *Mullin* decision controls in this case. As in *Mullin,* we will not impose upon the government the obligation to guarantee and assure the welfare of every member of the public. *See Mullin,* 639 N.E.2d at 284. Accordingly, we conclude that in this case, the public/private duty analysis applies.

Affirmed.

STATON and GARRARD, JJ., concur.