Craig K. JOHNSON, Jr.,
Appellant–Plaintiff,

v.

KEMPLER INDUSTRIES, INC.; Roper Whitney, Inc.; John Doe Company; and Richard Roe Company, Appellees–Defendants.

No. 20A03–9608–CV–288.

Court of Appeals of Indiana.

Jan. 31, 1997.

David T. Stutsman, Stutsman & Mulvaney, Elkhart, Samuel J. Rodino, Elkhart, for Appellant–Plaintiff.

Sharon Funcheon Murphy, Lulich Murphy & Dowling, Indianapolis, for Appellee–Defendant Kempler Industries, Inc.

## OPINION

HOFFMAN, Judge.

Appellant-plaintiff Craig Johnson, Jr. appeals the trial court's decision awarding summary judgment in favor of appellee-defendant Kempler Industries, Inc. ("Kempler") on Johnson's strict liability and negligence claims.

The facts relevant to the appeal disclose that Kempler is a corporation which buys and sells used factory machinery. On November 12, 1987, Kempler purchased a used Gauge Model Pexto Shear ("shear") at an auction. The shear, which was manufactured in 1963 and first sold in 1964, is designed to cut material placed in it by way of a cutting blade recessed within the machine which is activated, by the operator, by use of a foot pedal.

Based upon the various pleadings, depositions and exhibits, it appears that sometime after the shear was originally manufactured, in 1963, the shear was equipped with a safety guard which rested between the machine operator and the cutting blade. The safety guard, which was permanently affixed to the shear, contained an Allen bolt that secured the guard in the down-position; however, the guard could be raised and lowered into place by way of a piano-type hinge if the bolt holding the guard in the down-position was removed, allowing an employee access to the inner workings of the machine for maintenance purposes. The facts most favorable to Johnson disclose that when Kempler purchased the shear at the auction in 1987, the safety guard was attached. However, it is unclear at that time whether the Allen bolt was in place.

After purchasing the shear, Kempler cleaned the shear and affixed a warning label to the machine which read:

### WARNING

TO PREVENT SERIOUS BODILY INJURY

NEVER PLACE ANY PART OF YOUR BODY UNDER THE RAM OR WITHIN THE DIE AREA.

NEVER OPERATE, INSTALL DIES, OR MAINTAIN THIS MACHINE WITHOUT PROPER INSTRUCTION AND WITHOUT FIRST READING AND UNDERSTANDING THE OPERATOR'S OR MACHINE MANUAL.

NEVER INSTALL DIES OR SERVICE THIS MACHINE WITH THE FLYWHEEL IN MOTION AND/OR MOTOR ON.

IT IS THE EMPLOYER'S RESPONSIBILITY TO IMPLEMENT THE ABOVE AND ALSO TO PROVIDE PROPER DIES, DEVICES OR MEANS THAT MAY BE NECESSARY OR REQUIRED FOR ANY PARTICULAR USE, OPERATION, SET-UP OR SERVICE.

On November 9, 1988, Kempler sold the machine to Flexco Industries, Inc. ("Flexco").

Johnson was hired by Flexco through a temporary agency in March 1992. The first week Johnson was employed at Flexco, he worked as a general laborer. On March 19, 1992, however, Johnson was assigned to use the shear.

On that day, Johnson's supervisor told Johnson to cut and stack the metal. Johnson was given no further instructions before he began to run the shear. When Johnson operated the machine, the safety guard was not in place. Instead, it was raised such that Johnson was able to place his entire arm into the shear.

As Johnson attempted to feed the metal through the shear, the metal became wedged. In order to successfully feed the metal through the machine, Johnson began to manually adjust the metal. As Johnson was adjusting the metal, he placed his right hand near the cutting blade. While Johnson's hand was still near the cutting blade, the shear activated and the blade severed four fingers from his hand.

Johnson filed his complaint on February 18, 1994 seeking damages for the injuries he sustained as a result of the shear. Johnson alleged that his injuries were proximately caused by Kempler's sale of the defective shear in that Kempler failed to inspect and discover the defective safety guard, and negligently failed to give adequate warnings or

instructions regarding the danger of the machine as a result of the defective safety guard. Kempler filed its answer and, subsequently, filed a motion for summary judgment asserting that Johnson's claims were barred by the Indiana Statute of Repose and that Johnson's injuries were not proximately caused by a breach of duty owed by Kempler to Johnson.

On April 17, 1996, the trial court granted Kempler's summary judgment motion finding that:

> the machine entered the stream of commerce in 1964 at the latest. Kempler did not alter it in any way. It did not have any latent defects; and the consumer or user, that is, the plaintiff knew of the defect he alleges; and he had to be aware of the obvious danger that a descending shearer or cutter on a large machine presents to a press operator. Plaintiff nevertheless used the machine notwithstanding the obvious danger. Such is particularly so in this case, as the safety gate hanging on the front of the press between the operator and the blade, was, by a piano-type hinge, turned upright 180° and possibly secured there, effectively negating the safety feature of the gate....

The trial court concluded that "[n]o genuine issue of material fact exists here. The defendant Kempler is entitled to judgment against plaintiff as a matter of law." *Id.* Johnson's appeal of the trial court's decision ensued.

As restated, the issues presented for review are as follows:

> (1) whether Johnson's claim is barred by the ten-year statute of limitations [1] contained in Indiana's Product Liability Act; and
>
> (2) whether Kempler owed Johnson a duty to warn him of any defects.

When reviewing an entry of summary judgment, this Court uses the same standard used by the trial court. *Ramon v. Glenroy Const. Co., Inc.,* 609 N.E.2d 1123, 1127 (Ind.Ct.App.1993), *trans. denied.* Sum-

mary judgment is appropriate only if the pleadings and evidence designated show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Computers Unlimited v. Midwest Data Systems,* 657 N.E.2d 165, 167 (Ind.Ct.App.1995). The movant bears the burden to prove the non-existence of a genuine issue of material fact and may meet the burden with a demonstration that the undisputed material facts negate at least one element of the claim against it. *Id.* at 168. If the movant sustains the burden, then the opponent may not rest upon the pleadings but must set forth specific facts which show a genuine issue exists for trial. *Id.*

This Court will not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind. Ct.App.1994), *trans. denied.* Any doubt as to a fact or an inference to be drawn is resolved in favor of the nonmoving party. *Hanover College v. Thomas,* 617 N.E.2d 568, 570 (Ind.Ct.App.1993). However, summary judgment may be sustained upon any theory which is supported by the designated materials. Ind. Trial Rule 56(C); *Ind. Bd. of Public Welfare v. Tioga Pines,* 622 N.E.2d 935, 940 (Ind.1993), *cert. denied,* 510 U.S. 1195, 114 S.Ct. 1302, 127 L.Ed.2d 654 (1994). Summary judgment is rarely appropriate in negligence actions. *Frye v. Trustees of Rumbletown Free Methodist Church,* 657 N.E.2d 745, 747 (Ind.Ct.App.1995). However, issues of duty are questions of law for the court and may be appropriate for disposition by summary judgment. *Id.*

An action for strict liability in tort against sellers and manufacturers of defective products is governed by Indiana's Product Liability Act, IND. CODE § 33–1–1.5–1 through 33–1–1.5–5 (1991 Supp). Section five of the act provides that no negligence or strict liability action may be brought with respect to a product more than ten years after it was delivered to its initial user.[2] The

---

1. The statute is actually one of repose; however, the title to Indiana's statutory provision refers to a "statute of limitations." To avoid confusion, the statute will be referred to as a "statute of limitations."

2. In its entirety, section five provides:

> (a) This section applies to all persons regardless of minority or legal disability. Notwithstanding IC 34–1–2–5 [legal disabilities], it ap-

Indiana Supreme Court has held that this includes allegations of a failure to warn. *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 528, 418 N.E.2d 207, 212 (1981).

■ The product liability statute of limitations commences to run upon the delivery of a product to the initial user or consumer. *Stump v. Indiana Equipment Co., Inc.*, 601 N.E.2d 398, 401 (Ind.Ct.App.1992), *trans. denied.* Its purpose is to place a temporal limit upon liability for a product's defects. *Id.* The defects to which the statute applies are those present at the time it is conveyed by the seller to another party. *Id.* The seller of any such defective product is immune from suit after the prescribed period of time has elapsed. *Id.* at 401–402. Thus, here, the ten-year statute of limitations is implicated only if the complained-of defect was present at or before the time the shear was delivered to the initial user or consumer. *Id.* at 402.

■ In general, any party who was an essential part of the stream of commerce which resulted in the delivery to the initial user or consumer may claim the defense. *Id.* However, no party may assert the statute as a defense if the action is based upon a latent or patent defect which did not exist at the time of delivery to the initial user. *Id.* Furthermore, this Court in *Stump* held that an action involving post-sale (post-initial delivery) negligence, as opposed to a defect present at the time of that initial delivery, is not subject to the ten-year statute of limitations which begins to run at the time of delivery. *Id.*

■ In order to overcome the statute of limitations which would otherwise bar recovery, Johnson contends that the defect causing his injuries was the shear's safety guard. According to Johnson, the safety guard that was affixed to the shear at the time of his accident, was not installed by the original manufacturer of the machine, but, instead, was installed by Kempler. Johnson specifically asserts that because the safety guard was installed after the machine originally entered the stream of commerce, "the applicable statute of [limitations] began to run at the time the defective safety guard was placed on the machine in question or when [Kempler] replaced such device into the stream of commerce for use in 1988." Johnson further maintains that because there is a question of fact as to when the safety guard was put on the shear, the trial court erred in granting Kempler's summary judgment motion.

In support of his argument, Johnson relies upon *Hinds v. CompAir Kellogg*, 776 F.Supp. 1102 (E.D.Va.1991), *aff'd*, 961 F.2d 211 (4th Cir.1992 ) and *Richardson v. Gallo Equipment Co.*, 990 F.2d 330 (7th Cir.1993) for the proposition that when a piece of machinery becomes substantially rebuilt or reconditioned, a new statute of limitations begins to run for the purpose of a products liability action. Johnson further argues that the *Hinds* and *Richardson* cases should apply to the instant case because Kempler placed a defective guard on the shear, affixed an inadequate warning label, and then replaced the shear into the stream of commerce in 1988, thus commencing a new statute of limitations.

In *Denu v. Western Gear Corp.*, 581 F.Supp. 7 (S.D.Ind.1983),[3] a case similar to the instant case, an employee was injured while cleaning a reconditioned printing press. In *Denu*, it was determined that Indiana's statute of limitations would not bar an interpretation allowing recommencement of the statute when a product has been reconditioned, altered, or modified to the extent that a new product has been introduced into the

---

plies in any product liability action in which the theory of liability is negligence or strict liability in tort.

(b) Except as provided in section 5.5 of this chapter [asbestos-related injuries], a product liability action must be commenced within two (2) years after the cause of action accrues or within ten (10) years after the delivery of the product to the initial user or consumer. However, if the cause of action accrues at least eight (8) years but less than ten (10) years after

that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

IND.CODE § 33–1–1.5–5 (1991 Supp.)

3. Although this Court is not bound by federal court decisions construing Indiana law, where no Indiana cases have addressed the issue, the federal decisions are instructive.

stream of commerce. *Id.* at 8; *see, Black v. Henry Pratt Co.,* 778 F.2d 1278, 1282–1283 (7th Cir.1985) (if replacement part unreasonably dangerous and caused harm complained of, statute would begin to run at time of replacement); *see also, Wenger v. Weldy,* 605 N.E.2d 796 (Ind.Ct.App.1993), *trans. denied* (even if defendant's act of welding hitch clevis of hay baler constituted modification or reconditioning to extent that new product was introduced into commerce, statute of limitations began to run on date that welding occurred).

However, Johnson mischaracterizes the shear in suggesting that it has been reconditioned. The designated evidence establishes that when Kempler purchased the shear at the auction, the safety guard, which Johnson argues was defective, was already attached. No evidence was presented as to when that safety guard was attached to the shear. After cleaning the shear and affixing the warning label, Kempler then sold the shear to Flexco. The shear never underwent any substantial overhaul or reconditioning.

Johnson further argues that even if the shear is not determined to have been rebuilt, the ten-year period should be extended under the statute of limitations where the safety guard and the inadequate warning label were defective, unreasonably dangerous, and the proximate cause of the accident. According to Johnson, the safety guard was defective because it was not bolted into the down-position and could, instead, be swung-up into an unguarded position. The warning label was inadequate because it failed to alert Johnson that the safety guard should have been in the down-position before he operated the shear.

A product is "defective" if it is in a condition:

    (1) not contemplated by reasonable persons among those considered expected users or consumers of the product; and
    (2) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption.

IND.CODE § 33–1–1.5–2.5 (1988 Ed.). A product is also defective if the seller fails to give reasonable warnings or instructions to the consumer. *Id.* A product is "unreasonably dangerous" if it "exposes the user or consumer to a risk of physical harm to an extent beyond that contemplated by the ordinary consumer who purchases it with the ordinary knowledge about the product's characteristics common to the community of consumers." IND.CODE § 33–1–1.5–2 (1988 Ed.).

In *DeHoyos v. John Mohr & Sons,* 629 F.Supp. 69 (N.D.Ind.1984), *aff'd sub nom, Black v. Henry Pratt Co.,* 778 F.2d 1278 (7th Cir.1985), a wrongful death action was brought by survivors of workers killed by the release of carbon monoxide from a blast furnace in 1979. The plaintiffs alleged, *inter alia,* that the manufacturer was liable because the back-up shutoff valve was designed and made in a defective and unreasonably dangerous condition. The accident occurred more than ten years after delivery of the original shutoff valves, but within ten years of the delivery of certain replacement parts.

The Seventh Circuit reasoned that under Indiana's Product Liability Act, the plaintiffs were required to show "that the defect was the cause which, in natural and continuing sequence, unbroken by any efficient intervening cause, produced the result complained of and without which the accident would not have occurred." *Id.* at 1283–1293 (quoting *Craven v. Niagara Machine & Tool Works, Inc.,* 417 N.E.2d 1165, 1170 (Ind.Ct.App. 1981)). Furthermore, the Seventh Circuit ruled that liability could be imposed upon the manufacturer of a component "only where the component was in fact unreasonably dangerous or defective, and where the component was the cause of the injury complained of." *Id.* at 1283.

In *Richardson,* a worker was injured when he failed to hear a back-up alarm on a forklift sold to his employer by the defendant. At the time the forklift was originally manufactured and sold, in 1973, it was not equipped with a back-up alarm or warning light. The defendant added these items to the forklift in 1985, shortly before leasing it to Richardson's employer. In affirming summary judgment in favor of the defendant, the Seventh Circuit stated that a safety precaution is not

defective merely because it fails to prevent an accident. *Richardson*, 990 F.2d at 332.

Here, although Johnson argues that the safety guard was defective, there was no evidence designated that the guard was the cause of Johnson's injury. When Kempler purchased the shear, the safety guard was affixed. Kempler did not alter the shear in any way before selling it to Flexco other than to clean the machine and attach a warning label. The warning label stated that the shear should not be operated without the safety guard in the down-position. When lowered into place, the guard was effective.

Evidence was designated that there was an Allen bolt attached to the safety guard that prevented the guard from being raised into the up-position. The evidence further disclosed, however, that it was necessary for the bolt to be removable so that the inner workings of the shear could be exposed for maintenance purposes.

Although it is unclear whether the bolt was attached to the shear at the time that Kempler sold the shear to Flexco, the evidence does disclose that the bolt was not in place at the time of Johnson's injury. Nevertheless, there is no significant evidence of any defect in the safety guard other than the fact that the bolt that kept the guard from being raised to the unguarded position was removed at the time Johnson operated the shear.

■ The primary concern of products liability actions is to protect the user from the unreasonably dangerous product or from one fraught with unexpected dangers. *Royal v. Black and Decker Manufacturing Company*, 205 So.2d 307, 309 (Fla.Dist.Ct.App.1967). It is not itself a breach of duty to supply materials which are reasonably safe and customarily used, even though the material might conceivably be made more safe, nor must the manufacturer make his product more safe when the danger to be avoided is obvious to all. *Id.; see also, Evans v. General Motors Corporation*, 359 F.2d 822 (7th Cir.1966), *cert. denied*, 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966).

■ Here, the designated evidentiary matter, when considered in the light most favorable to Johnson, supports the inference that Johnson was injured when he attempted to operate the shear without the safety guard in the down-position. Nevertheless, we cannot support the view that the safety guard attached to the shear was unreasonably dangerous under these circumstances. The fact that the Allen bolt could be removed to allow access to the inner workings of the shear did not render the safety guard defective.

■ The risk of injury in operating a shear without the safety guard in place might have been dangerous. However, the safety guard was not unreasonably dangerous. Instead, such risk of harm as was, albeit tragically, suffered by Johnson is normal and contemplated within a consumer's ordinary knowledge about the product's characteristics. *Rupert*, 661 N.E.2d at 828; *see also, Hamilton v. Roger Sherman Architects*, 565 N.E.2d 1136, 1138 (Ind.App.1991) (forty-inch high counter top not unreasonably dangerous). Because it cannot be said that the safety guard itself was defective or contributed to the accident, Johnson cannot extend or toll the ten-year statute of limitations.

■ Johnson further contends that the trial court's summary judgment decision was contrary to law because it erroneously applied the open and obvious danger rule in determining whether the safety guard was defective and unreasonably dangerous. Under the open and obvious danger rule, a manufacturer of a product is liable only for defects which are hidden and not normally observable. *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810, 815 (Ind.Ct.App.1995).

■ As Johnson correctly contends, the open and obvious danger rule does not apply to strict liability claims under the act. *Koske v. Townsend Engineering Co.*, 551 N.E.2d 437, 442 (Ind.1990). However, the relative obviousness of a defect is nevertheless relevant in determining whether or not a product is defective and unreasonably dangerous. *Welch*, 651 N.E.2d at 815. Thus, although the rule itself is inapplicable, the trial court did not err in considering the openness and obviousness of the dangers inherent in operating a shear in determining the risks contemplated by the ordinary consumer.

Next, Johnson argues that even if this Court finds that his strict liability claim is barred, Johnson's negligence claim should be allowed because Kempler owed Johnson a duty to inspect, identify, and correct the defect in the safety guard before selling the machine to Flexco.[4]

In order to recover upon a theory of negligence, the plaintiff must prove a duty flowing from the defendant to the plaintiff. *Stump*, 601 N.E.2d at 402. The duty owed is determined by the relationship of the parties to each other. *Id.* Although the determination is treated as a question of law, the trial court must, in the process, necessarily draw conclusions to the questions of fact. *Id.* The duty, when found to exist, is the duty to exercise reasonable care under the circumstances. *Id.* The duty never changes; however, the standard of conduct required to measure up to that duty varies depending upon the particular circumstances. *Id.*

In support of his argument, Johnson attempts to distinguish the facts of *Stump* from those of the present case. In *Stump*, where an employee of an excavating company was injured when a wiring defect caused a grading machine to move unexpectedly, this Court found that the defendant's duty of reasonable care did not require that it inspect, discover, and warn of a hidden defect. *Stump*, 601 N.E.2d at 407. This Court specifically stated that:

> [The defendant] MacAllister's status as a trade-in dealer defined its duty of inspection. It performed only an appraisal inspection for trade-in purposes, never performed any clean-up or repair work on the grader prior to resale, and indeed never took physical possession of the grader at all. As a trade-in dealer, reasonable care would not include inspecting the grader thoroughly enough to discover the bypassed neutral safety switch and warning [plaintiff's employer] of the defect.

*Id.*

Here, the designated evidence discloses that Kempler's only connection with the shear was as an intermediary party. Kempler does not employ individuals or outside consultants to inspect the safety mechanisms of the used machinery, and Kempler does not rebuild any of the machines it acquires. Kempler bought the shear at an auction, cleaned it and affixed a warning label, and sold it to Flexco. After the sale, Kempler had no further contact with the shear.

Here, as in *Stump*, any inspection of the shear performed by Kempler was for Kempler's benefit. The designated evidence shows that Kempler does not engage in the "sort of exhaustive inspection generally made for purposes of ascertaining and advising whether equipment is reasonably safe for use." *See id.* Moreover, as was determined above, the safety guard on the shear was not itself defective and did not contribute to Johnson's accident.

In order to prevail upon summary judgment, it was incumbent upon Kempler to demonstrate that there were no reasonable inferences which a trier of fact could draw indicating that Kempler owed a duty to Johnson to inspect, identify, and correct the safety guard anomaly. Based upon our review of the foregoing facts, we conclude that Kempler has succeeded in making such a showing.

Accordingly, the order granting summary judgment in favor of Kempler is affirmed.

Affirmed.

GARRARD and ROBERTSON, JJ., concur.

---

4. The trial court declined to address this issue, finding that the issue focusing upon the statute of limitations was dispositive.