Zon D. MOORE, and Teresa Moore, Appellants–Plaintiffs,

v.

GREENSBURG HIGH SCHOOL, and Greensburg Community Schools, Appellees–Defendants.

No. 16A05–0202–CV–79.

Court of Appeals of Indiana.

Aug. 20, 2002.

M. Michael Stephenson, McNeeley, Stephenson, Thopy and Harrold, Shelbyville, IN, Attorney for Appellants.

Thomas J. Belcher, Shannon L. Robinson, Kelley, Belcher & Brown, Bloomington, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Appellants-plaintiffs Zon D. Moore and Teresa Moore (collectively, the Moores), appeal the jury's verdict that was entered in favor of the appellees-defendants Greensburg High School and Greensburg Community Schools (Greensburg) with respect to their premises liability action. Specifically, the Moores argue that the trial court erroneously instructed the jury that Zon was a licensee on Greensburg's premises while decorating for a school party. The Moores go on to assert that the trial court erred in refusing their tendered instruction that Zon was actually an invitee on the premises.

### FACTS

The facts most favorable to the judgment are that Zon Moore volunteered to become a member of a committee to assist with decorating for the after-prom that was to be held at Greensburg High School. The post-prom committee is composed of parents of Greensburg High School students. At some point prior to April 14, 2000, a written request was submitted to the School Board for the students to use the school for that function. The School Board approved that request and also authorized the committee to use the building in order to decorate for the party.

The Greensburg "after-prom" party for students is typically held each year at the high school. As was the procedure in 2000, a written request for permission to use the high school for this function is routinely submitted to the School Board by the party planning committee. Once the request is approved, the parent committee chairperson is given keys to the building, which provide access to the entire facility for post-prom and decorating purposes.

The decorating for the party is performed during non-school hours by volunteer parents on the committee. The only school employees present at the time of decorating are the building custodians. They do not assist the parents with the decorating in any manner.

Sometime in April 2000, Tom Ricke, a member of the school maintenance personnel, brought out some scaffolding and placed it near the school gymnasium door. Ricke informed the two committee chairpersons that they should contact him regarding the use of the scaffolding in the event that they had questions. The remaining parts of the scaffolding were located in the boiler room of the high school.

The scaffolding has warning labels attached to it at various locations, including one on the bottom tier, and one on each of the upper tiers. The label on the upper tier can be seen when building the scaffolding or while ascending the scaffolding to the second tier. While the condition of the warning labels on the bottom tier at the time of Zon's fall is unknown, the labels on the upper tiers were legible and stated:

Before using scaffold:

1. Read safety rules.

2. Push leg adjustment collars down below safety locks.

3. Lock caster brakes.

4. Fasten brake hooks.

5. Install safety railing.

6. Use outriggers to enhance the base for additional stability. Do not roll scaf-

folding with man or materials on when using the platform. Also when climbing, climb over the top of the platform. Never swing around outside of the end. Appellees' App. p. 4.

On April 14, 2000, one of the parent volunteers arrived at the school and observed that only one tier of the scaffolding had been constructed. Several of the parents proceeded to install the second tier but no school employee instructed or assisted them in doing so. John Burkhart, one of the volunteers who had served on the decorating committee in prior years, disassembled the scaffolding in order to relocate it. Following reassembly, Burkhart told the parents that they should climb the scaffolding while using the ladder. Burkhart was concerned, however, that Zon could not fit through the rungs of the ladder and on to the scaffolding because Zon weighed 260 pounds and was over six feet tall. In fact, Burkhart recommended to Zon that he not even climb the scaffolding. Zon, however, attempted to step on the second tier platform of the scaffolding by stepping around the outside of the ladder, rather than climbing up and over the ladder or going through its rungs as Burkhart had suggested.

Zon testified that while he attempted to step around the ladder, the scaffolding became unstable and he either fell or was forced to jump to the ground. As a result, Zon sustained serious injuries to his heels and ankles. Burkhart approached Zon immediately after the fall and Zon acknowledged that he should not have attempted to climb the scaffolding.

At the time of the fall, no outriggers were attached to the scaffolding. Gary Land, another parent volunteer, remarked that had he been advised by school personnel to use the outriggers, he may not have done so, as he was familiar with scaffolding, had used it before without that equipment and had not experienced any difficulties. Two other parent volunteers had used the second tier of the scaffolding without the outriggers and did not experience any problems.

As a result of Zon's fall, the Moores filed a complaint against Greensburg on December 19, 2000, alleging that because the outriggers on the scaffolding had not been provided, the employees and agents of Greensburg had failed to maintain and/or provide the scaffolding in a safe manner that caused Zon's injuries. Zon sought damages for medical expenses, lost wages and pain and suffering. Teresa also presented a claim for loss of consortium.

Following the presentation of the evidence, the trial court gave the following instruction to the jury over the Moores' objection:

> In this case, the plaintiff, Zon D. Moore, was a licensee when he entered the Greensburg High School on the day of the accident. The law is that licensees enter premises for their own convenience and at their own risk and enter the property as they find it. The owner owes a licensee the duty to refrain from willfully or intentionally injuring him or acting in a manner that will increase the licensee's peril. An owner has a duty to warn a licensee of any hidden dangers on the property of which the owner has knowledge.

Appellants' App. p. 141–42. The trial court then refused one of the Moores' tendered instructions asserting that Zon should have been considered an invitee on the premises, thus providing that Greensburg was obligated to exercise reasonable care to protect him from injury. The jury ultimately entered a verdict for Greensburg on November 21, 2001, and the Moores now appeal.

## DISCUSSION AND DECISION

In addressing the Moores' contention that the trial court erred in instructing the jury with regard to the standard of care that Greensburg owed to Zon, we initially observe that the manner of instructing the jury rests with the trial court's discretion. *Morgen v. Ford Motor Co.*, 762 N.E.2d 137, 140 (Ind.Ct.App. 2002). We consider the instructions as a whole and with references to each other in determining whether error occurred. *Whisman v. Fawcett*, 470 N.E.2d 73, 81 (Ind.1984). An instruction must be a correct statement of the law, be applicable to the evidence adduced at trial, and be relevant to the issues the jury must decide in reaching its verdict. *Morgen*, 762 N.E.2d at 140.

Next, we note that an entrant's status on the land determines the duty that the landowner owes to him. *Barbre v. Indianapolis Water Co.*, 400 N.E.2d 1142, 1145 (Ind.Ct.App.1980). A landowner owes a licensee a duty to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril. *Id.* In *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind.1991), our supreme court observed that licensees and trespassers are those who enter the premises for their own convenience, curiosity or entertainment. Unlike trespassers, however, licensees have a license to use the land. That is, licensees are privileged to remain on the land by virtue of the owner's or occupier's permission or suffrage. *Id.* at 640. A landowner owes the highest duty to an invitee: a duty to exercise reasonable care for his protection while he is on the landowner's premises. *Id.* at 639.

The *Burrell* court went on to adopt the test set forth in *Restatement (Second) of Torts*, § 332 (1965), where it was observed that:

Adoption of the invitation test leads us to declare that at least those persons described in the Restatement (Second) of Torts § 332 qualify as invitees:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on the land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

*Id.* at 642.

In the instant case, the Moores urge that Zon qualified as an invitee at the school, claiming that he was both specifically invited onto the premises and would qualify as a public invitee. They allege that the school employees' conduct reasonably conveyed an invitation to the parents to use the school building for purposes of decorating for the after-prom. Thus, the Moores claim that Greensburg owed Zon a duty of reasonable care to protect him from injury. Appellants' Br. p. 7, 13–14.

Contrary to the Moores' claims, the circumstances here demonstrate that Zon's injury occurred at the school during a time that the School Board had granted permission to the parents to use the high school for post-prom decorating. There was no express or implied invitation extended to Zon by the school in accordance with our supreme court's holding in *Burrell*. It is undisputed that neither the School Board nor anyone on behalf of the school invited Zon onto the premises. Rather, the evidence demonstrates that Zon volunteered to become a member of the decorating committee.

We also observe that the school did not hold the premises open to the public at

large to enter at will upon the land for their own purposes. It was available only to those parent members of the after-prom committee for the purpose of decorating for the after-prom event. The parent committee, of which Zon was a member, was given keys to the high school so that they could enter. The school did not provide any inducement or encouragement to Zon to enter the premises. Rather, the evidence demonstrates that the school simply granted permission to the post-prom parent committee to use the facility. As a result, Zon was at the high school on the date of his injury only by virtue of the permission given by the School Board for the parents to use the high school as the location for holding the post-prom. Therefore, Zon was a licensee on the premises and the trial court properly instructed the jury on this issue.

Judgment affirmed.

VAIDIK and BARNES, JJ., concur.