**Edward and Jayne RHOADES, Appellants–Plaintiffs,**

v.

**HERITAGE INVESTMENTS, LLC and Timothy E. Moll, Appellees– Defendants.**

No. 82A01–0502–CV–54.

Court of Appeals of Indiana.

Dec. 29, 2005.

Rehearing Denied March 9, 2006.

Reed S. Schmitt, David G. Harris, Frick Powell Whinrey Cravens and Schmitt, LLP, Evansville, for Appellants.

Eric D. Johnson, John B. Drummy, Pfenne P. Cantrell, Kightlinger and Gray, LLP, Indianapolis, for Appellee.

## OPINION

KIRSCH, Chief Judge.

Edward and Jayne Rhoades appeal the trial court's grant of summary judgment in favor of Heritage Investments, LLC, and Timothy E. Moll (collectively "Heritage"). The sole issue for our review is whether the trial court properly granted Heritage's summary judgment motion.

We affirm.

## FACTS AND PROCEDURAL HISTORY [1]

Edward Rhoades and John Maier met regularly to walk at Eastland Mall in Evansville. During the men's walk on Saturday, May 20, 2000, Maier mentioned that Heritage Investments had renovated a building that it was going to either lease or sell. Maier, who had been a long-time friend of Heritage Investments co-owners Timothy and Fred Moll, asked Rhodes to accompany him to look at the building. When Rhoades agreed, Maier contacted Timothy Moll that morning and arranged to meet him at the building. Rhoades did not know why Maier wanted to look at the building.

Rhoades, who had driven Maier to the mall earlier that morning, drove Maier to the building after their walk. Rhoades walked into the building with Maier, and Moll was waiting inside. Rhoades was neither invited into the building nor took part in the conversation between Maier and Moll. On the other hand, Rhoades was not asked to leave and believed he had permission to be in the building. Rhoades noticed that the building was big, empty, and dimly lit. He noticed no more than two single-bulb drop lights. Most of the light was coming from the windows at the front of the building.

At some point, Rhoades followed Maier and Moll up the stairs to the second floor. No one asked Rhoades to go upstairs; he was just curious to see what was up there. The staircase in the building, which had recently been rebuilt, was designed to accommodate a steep angle, and included three to four steps up, an angled landing, and several remaining steps up to the second floor. Rhoades noticed before he went up the stairs that one side of the stairwell consisted of open studs, and the other side was a brick wall. Neither the stairway nor the landing had handrails or a guardrail. Rhoades was afraid that he might fall through the studs, so he hugged the brick wall as he ascended the staircase.

Rhoades felt uncomfortable on the second floor because of the lack of guardrails, the poor lighting, and his fear of heights. He decided to go back downstairs before Maier and Moll. Rhoades hugged the brick wall and descended the stairs to the landing without incident. When Rhoades was on the landing, he thought that he had reached the bottom of the stairs. He took a step onto what he believed was the

1. We held oral argument in Indianapolis on October 5, 2005.

ground floor and fell off the landing. Rhoades broke his arm and his glasses.

Rhoades filed a negligence action against Heritage. Heritage filed a summary judgment motion, which the trial court granted. Specifically, the court concluded that because Rhoades entered the building for his own curiosity, he was a licensee who took the property as he found it. The court also concluded that Heritage did not willfully or wantonly injure Rhoades or act in a manner to increase his peril and that it did not breach its duty to warn Rhoades of any latent danger on the premises because Rhoades recognized from the moment he entered the building that it was a work area, and he noticed all of the alleged defects before falling. Rhoades appeals.

## DISCUSSION AND DECISION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Dunifon v. Iovino*, 665 N.E.2d 51, 54 (Ind.Ct.App. 1996), *trans. denied*, (citing Ind. Trial Rule 56(C)). When reviewing the trial court's decision on a summary judgment motion, we stand in the shoes of the trial court. *Id.* at 55. The trial court's grant of summary judgment is clothed with a presumption of validity. *Id.*

■ The law is well established that a person entering upon the land of another comes upon the land as an invitee, a licensee, or a trespasser. *Id.* The person's status on the land defines the nature of the duty owed by the landowner to the visitor. *Id.* A landowner owes the highest duty of care to an invitee, that duty being to exercise reasonable care for the invitee's protection while he is on the premises. *Taylor v. Duke*, 713 N.E.2d 877, 881 (Ind.Ct. App.1999). Landowners owe a licensee the duty to refrain from willfully or wan-

tonly injuring him or acting in a manner to increase his peril. *Id.* This includes the duty to warn a licensee of any latent danger on the premises of which the landowner has knowledge. *Id.* Finally, the duty owed to a trespasser is the duty to merely refrain from wantonly or willfully injuring him after discovering his presence. *Id.*

■ Thus, the first step in resolving a premises liability case is to determine the plaintiff's visitor status. *Id.* The visitor status then defines the duty owed from the landowner to the visitor. *Id.* A person's status on the land, along with the duty owed, is a matter left for determination by the trial court, not the jury. *Id.*

■■ In *Burrell v. Meads*, 569 N.E.2d 637 (Ind.1991), our supreme court undertook a comprehensive review of premises liability law in Indiana. The *Burrell* court formally adopted the "invitation test" as the analytical framework for deciding who is an invitee. *Id.* at 642. Using the adopted framework, the court announced three categories of individuals entitled to invitee status when on a landowner's property: the public invitee, the business visitor, and the social guest. *Id.* Licensees and trespassers are defined as those who enter the land of another for their own convenience, curiosity, or entertainment and take the premises as they find them. *Taylor*, 713 N.E.2d at 881. Unlike trespassers, however, licensees have a privilege to enter or remain on the land by virtue of the landowner's or occupier's permission or sufferance. *Id.*

This court addressed the differences between an invitee and a licensee in *McCormick v. State*, 673 N.E.2d 829, 836 (Ind.Ct. App.1996). There, Paul McCormick died in a boating accident at Morse Reservoir when he and his boat went over a spillway near the dam. Paul's widow, Nora, in her capacity as the personal representative of

Paul's estate, sued the Water Company, which owned the reservoir, and the State, which regulates various matters relating to it. The trial court granted summary judgment in favor of both defendants, and Nora appealed. She argued that Paul was a public invitee of the Water Company at the time of the accident. The Water Company countered that he was a licensee.

We noted that an invitee is a person who is invited to enter or to remain on another's land whereas a licensee is privileged to enter or to remain on the land by virtue of permission or sufferance. Thus, in the determination of whether an individual is an invitee or a licensee, the distinction between the terms "invitation" and "permission" becomes critical. *Id.*

We further noted that the comments to the Restatement (Second) of Torts § 330 provide as follows:

> c. *Consent and toleration.* The word "consent," or "permission," indicates that the possessor is in fact willing that the other shall enter or remain on the land, or that his conduct is such as to give the other reason to believe that he is willing that he shall enter, if he desires to do so.

*McCormick,* 673 N.E.2d at 836.

We also observed that the comments to the Restatement (Second) of Torts § 332 clarify the distinction between invitation and permission:

> b. *Invitation and permission.* Although invitation does not in itself establish the status of an invitee, it is essential to it. An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the

possessor is willing that they shall enter if they desire to do so.

> \* \* \* \* \* \*

> Mere permission, as distinguished from invitation, is sufficient to make the visitor a licensee, as stated in § 330; but it does not make him an invitee . .

*McCormick,* 673 N.E.2d at 836–37.

We concluded that the decisive factor with regard to whether the possessor had extended an "invitation" or "permission" is the interpretation that a reasonable man would put upon the possessor's words and actions given all of the surrounding circumstances. *Id.* at 837. In *McCormick,* we construed the evidence in the light most favorable to the decedent and concluded that no reasonable person could conclude that the Water Company extended an invitation to Paul to use Morse Reservoir. *Id.* Specifically, we found that Nora produced no evidence from which one could conclude that the Water Company, desired, induced, encouraged, or expected the decedent to enter the reservoir. *Id.* Rather, the evidence most favorable to Paul established that the Water Company merely gave him permission to enter the reservoir. This mere permission made Paul a licensee. *Id.; see also Moore v. Greensburg High Sch.,* 773 N.E.2d 367 (Ind.Ct.App.2002) (holding that parent injured while decorating high school for post-prom party on volunteer basis was on school premises as licensee, not invitee).

■ Here, Rhoades walked into the building with Maier, and Moll was waiting inside. Rhoades was neither invited into the building nor took part in the conversation between Maier and Moll. On the other hand, Rhoades was not asked to leave and believed he had permission to be in the building. No one invited him to go upstairs. He admitted that he went upstairs because he was just curious to see what

was up there. Based upon these facts, no reasonable person could conclude that Moll extended an invitation to Rhoades to enter the building or to go upstairs. Rather, the evidence most favorable to Rhoades establishes that Moll merely gave Rhoades permission to enter the building and to go upstairs. This mere permission made Rhoades a licensee.

Nevertheless, Rhoades contends that even if he was not expressly invited into the building, Maier's status as an invitee should extend to him because he entered the building with Maier. In support of his proposition, Rhoades directs us to *Dunifon*, 665 N.E.2d at 51. There, the Dunifons gave their high-school-aged granddaughter, Meredith, permission to invite several of her classmates to their lake cottage for Memorial Day 1991. Meredith's father assisted in preparing a map and directions for Meredith to pass out at school. Meredith invited several friends, including Ryan Moore.

On Memorial Day weekend, eighteen-year-old Anthony Iovino was staying with Moore at the Moores' family lake cottage. On Memorial Day, Iovino accompanied Moore to the Dunifons' lake cottage pursuant to Meredith's invitation to Moore. Meredith knew Iovino from school, and when he arrived at the lake cottage with Moore, Meredith did not ask him to leave. In fact, when Moore and Iovino arrived, Meredith's mother provided them with a snack.

Meredith and her friends enjoyed a day of boating, swimming and knee boarding behind the Dunifons' boat. Following the boating, several of the group, including Iovino went swimming without checking the depth of the water. Iovino dove head first off the end of the Dunifons' pier. The water was only three feet deep, and Iovino struck the bottom of the lake and broke his neck.

Iovino filed a premises liability lawsuit against the Dunifons alleging negligence. The trial court denied the Dunifons' summary judgment motion and granted partial summary judgment in favor of Iovino after concluding that he was an invitee to whom the Dunifons owed a duty of reasonable care. The Dunifons appealed.

This court noted that pursuant to *Burrell*, the invitation itself was the first step of the inquiry into Iovino's status on the land. *Id.* at 56. In this regard, we noted that Meredith and her father prepared directions to the lake cottage, which Meredith passed out to several of her friends at school. Meredith expressly invited Moore to the cottage on Memorial Day. Iovino was spending Memorial Day with Moore and his family and came to the Dunifons' cottage with Moore pursuant to Meredith's invitation to Moore at school. Meredith knew Iovino from school. Although it was disputed whether Meredith expressly invited Iovino, we noted that this issue was not material to the outcome of the litigation because the undisputed facts established that, at the very least, Iovino was at the Dunifons' cottage under a reasonably implied invitation. *Id.*

However, the facts before us are distinguishable from those in *Dunifon*. Specifically, in *Dunifon*, Iovino went to the Dunifons' premises with the purpose of participating in the activities for which the premises were held open, and actively participated in these activities for an entire day. The Dunifons treated Iovino as they treated all of their invited guests, even offering him a snack upon his arrival. Here, however, Rhoades' sole purpose in going to the building was to accompany Maier, who Rhoades had driven to the mall earlier that morning. Rhoades had no other business at the building. Further, Moll did not treat Rhoades as he

treated Maier. Moll did not invite Rhoades into the building or upstairs.

Although these facts are distinguishable from those in *Dunifon,* they are substantially similar to those in *Howard v. The Gram Corporation,* 268 Ga.App. 466, 602 S.E.2d 241 (2004), *cert. denied.* There, Mary Howard accompanied her adult daughter, Marlana, to a local radio station where Marlana had an interview. The two women waited in the radio station's lounge until Marlana was led back to the studio area for her interview. As Mary was walking through the lounge, she fell and was injured. She filed a negligence action against The Gram Corporation, which owned the radio station. Gram filed a summary judgment motion, which the trial court granted. Mary appealed.

The Georgia Court of Appeals noted that Mary's sole purpose in going to the radio station was to accompany her daughter. Mary had no other business at the radio station. The court concluded that under these circumstances, Mary was properly considered a licensee. *Id.* at 243. Here, as in *Howard,* Rhoades' sole purpose in going to the building was to accompany Maier. He had no other business there. Like Mary, Rhoades was properly considered a licensee. *See also Henry H. Cross Co. v. Simmons,* 96 F.2d 482, 486 (8th Cir.1938) ("One who accompanies an invitee to the premises of another for his own pleasure or for his own purpose is not an invitee.")

Having determined the trial court correctly considered Rhoades a licensee, we must now determine whether the trial court properly determined that Heritage was entitled to judgment as a matter of law on the issue of whether it breached the duty it owed to Rhoades. A landowner's only duties to a licensee are to refrain from willfully and wantonly injuring the licensee and to warn the licensee of any latent danger on the premises of which the owner has knowledge. *Wright v. Int'l Harvester Co., Inc.,* 528 N.E.2d 837, 839 (Ind.Ct.App.1988), *trans. denied.*

■ Here, Rhoades has failed to show or even allege that Heritage renovated the building and rebuilt the stairway with the wanton and willful intent to injure Rhoades or anyone else. Rather, Rhoades' sole contention is that there is a genuine issue of fact regarding whether the stairway, which was dimly lit and lacked guardrails and handrails, constituted a latent danger. Latent is defined as concealed or dormant. *Black's Law Dictionary* 898 (8th ed.2004). In his deposition, Rhoades admitted that he knew that the building was dimly lit and the staircase lacked guardrails and handrails before he ascended it. He cannot now argue that these alleged defects were latent dangers. Undisputed facts found in the designated materials support the trial court's determination that, as a matter of law, Heritage did not violate any duty owed to Rhoades as a licensee. We therefore conclude that the trial court properly entered summary judgment in favor of Heritage.

Affirmed.

RILEY, J., and MAY, J., concur.