# FOR PUBLICATION



FILED

Jan 09 2014, 6:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**ROBERT J. PALMER**
May · Oberfell · Lorber
Mishawaka, Indiana

**RICHARD J. LaSALVIA**
South Bend, Indiana

ATTORNEYS FOR APPELLEES:

**CATHLEEN M. SHRADER**
**THOMAS M. KIMBROUGH**
Barrett & McNagny LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEREMY D. MOHR, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 43A03-1306-CT-214 |
| | ) | |
| VIRGINIA B. SMITH REVOCABLE TRUST | ) | |
| and VIRGINIA B. SMITH, AS TRUSTEE OF | ) | |
| THE VIRGINIA B. SMITH REVOCABLE | ) | |
| TRUST, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE KOSCIUSKO SUPERIOR COURT
The Honorable Duane G. Huffer, Judge
Cause No. 43D01-1204-CT-34

**January 9, 2014**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

On the evening of September 17, 2010, Appellant-Plaintiff Jeremy Mohr and his friend Mallori Kastner entered property owned by Appellee-Defendant the Virginia B. Smith Revocable Trust and controlled by Appellee-Defendant Virginia Smith (collectively, "Smith") without Smith's knowledge, permission, or invitation. While on Smith's property, Mohr and Kastner lay together in a hammock that was strung between two trees. Mohr brought suit against Smith seeking damages for serious injuries he sustained when one of the two trees supporting the hammock failed and fell on him and Kastner. Smith sought and was granted summary judgment. On appeal, Mohr contends that the trial court erroneously granted summary judgment in favor of Smith. We affirm.

**FACTS AND PROCEDURAL HISTORY**

At all times relevant to the instant appeal, Smith owned a residential lake-front property located at 807 Esplanade Road on Winona Lake. Smith's property includes a pier and a small strip of lake-front land where Smith had hung a hammock between two trees. Smith was aware that members of the general public would occasionally come onto her property to look at the lake, sit on her pier, or sit in her hammock, even though she did not expressly invite any member of the public to do so.

On September 16, 2010, Mohr and Kastner, students at nearby Grace College, were walking along Esplanade Road at approximately ten or eleven in the evening when they came to Smith's property and saw the hammock. Mohr and Kastner decided to sit in the hammock. Mohr and Kastner stayed in the hammock for about an hour.

2

The next night, Mohr and Kastner were again walking along Esplanade Road after dark when they came to Smith's property and decided to sit in the hammock. Kastner first got into the hammock, followed by Mohr. While in the hammock, Kastner and Mohr were struck when one of the trees supporting the hammock failed and fell over. Mohr did not know who owned the property on which the hammock had been hung and neither he nor Kastner had been invited to use the hammock. Tragically, Kastner died and Mohr was seriously injured as a result of being struck by the falling tree.

On April 3, 2012, Mohr filed suit against Smith. On August 9, 2012, Mohr filed an amended complaint, in which he alleged that he was entitled to recover from Smith under a theory of premises liability. On or about November 22, 2012, Smith filed a motion for summary judgment, claiming that, as a matter of law, she did not breach any duty potentially owed to Mohr. The trial court granted summary judgment for Smith in an order dated May 16, 2013. This appeal follows.

## DISCUSSION AND DECISION

### Whether the Trial Court Erred in Granting
### Summary Judgment in Favor of Smith

Mohr contends that the trial court erred in granting summary judgment in favor of Smith. In raising this contention, Mohr argues that the trial court erroneously found that he was, at most, a licensee on Smith's property, and that Smith had not breached any duty owed to Mohr. We disagree.

"On appeal, a trial court's grant of summary judgment is 'clothed with a presumption of validity.'" *Rosi v. Bus. Furniture Corp.*, 615 N.E.2d 431, 434 (Ind. 1993) (citing *Ind.*

3

*Dep't of State Revenue v. Caylor-Nickel Clinic, P.C.*, 587 N.E.2d 1311, 1312-13 (Ind. 1992)).

> We review a trial court's grant of summary judgment de novo, *City of Indianapolis v. Buschman*, 988 N.E.2d 791, 793 (Ind. 2013), and we will affirm "only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Overton v. Grillo*, 896 N.E.2d 499, 502 (Ind. 2008); *see also* Ind. Trial Rule 56(C). Like the trial court, we construe all evidence and resolve all doubts in favor of the non-moving party, *Town of Avon v. W. Cent. Conservancy Dist.*, 957 N.E.2d 598, 602 (Ind. 2011), so as to avoid improperly denying him his day in court. *Jordan v. Deery*, 609 N.E.2d 1104, 1107 (Ind. 1993).

*Miller v. Dobbs*, 991 N.E.2d 562, 564 (Ind. 2013). "The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law." *Rosi*, 615 N.E.2d at 434.

## A. Negligence in General

> To prevail on a theory of negligence, a plaintiff must prove: (1) that the defendant owed plaintiff a duty; (2) that it breached the duty; and (3) that plaintiff's injury was proximately caused by the breach. *Dennis v. Greyhound Lines, Inc.*, 831 N.E.2d 171, 173 (Ind. Ct. App. 2005), *trans. denied*. Summary judgment is rarely appropriate in negligence cases because they are particularly fact sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004). Nonetheless, summary judgment is appropriate when the undisputed material evidence negates one element of a negligence claim. *Id*. at 385.

*Winfrey v. NLMP, Inc.*, 963 N.E.2d 609, 612 (Ind. Ct. App. 2012) (quoting *Ill. Bulk Carrier, Inc. v. Jackson*, 908 N.E.2d 248, 253 (Ind. Ct. App. 2009), *trans. denied*).

Whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide. *Id*. (citing *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003)).

4

The status of a person entering the land of another determines the duty that the landowner or occupier owes to him. *Taylor v. Duke*, 713 N.E.2d 877, 880 (Ind. Ct. App. 1999). A person's status on the land is generally a matter left for determination by the trial court, not the jury. *Winfrey*, 963 N.E.2d at 613; *Taylor*, 713 N.E.2d at 881.

### B.  Mohr's Status on Smith's Land

### 1.  Relevant Authority Relating to One's Status on Another's Property

The law is well established that a person entering upon the land of another comes upon the land as an invitee, a licensee, or a trespasser. *Rhoades v. Heritage Invs., LLC*, 839 N.E.2d 788, 791 (Ind. Ct. App. 2005) (citing *Dunifon v. Iovino*, 665 N.E.2d 51, 54 (Ind. Ct. App. 1996), *trans. denied*). Again, the person's status on the land defines the nature of the duty owed by the landowner to the visitor. *Id.* Thus, the first step in resolving a premises liability case is to determine the plaintiff's visitor status. *Id.*

> In *Burrell v. Meads*, 569 N.E.2d 637 (Ind. 1991), [the Indiana Supreme Court] undertook a comprehensive review of premises liability law in Indiana. The *Burrell* court formally adopted the "invitation test" as the analytical framework for deciding who is an invitee. *Id.* at 642. Using the adopted framework, the court announced three categories of individuals entitled to invitee status when on a landowner's property: the public invitee, the business visitor, and the social guest. *Id.* Licensees and trespassers are defined as those who enter the land of another for their own convenience, curiosity, or entertainment and take the premises as they find them. *Taylor*, 713 N.E.2d at 881. Unlike trespassers, however, licensees have a privilege to enter or remain on the land by virtue of the landowner's or occupier's permission or sufferance. *Id.*

*Id.* at 791-92.

This court addressed the differences between an invitee and a licensee in *McCormick v. State*, 673 N.E.2d 829, 836 (Ind. Ct. App. 1996). There, Paul McCormick died in a

boating accident at Morse Reservoir when he and his boat went over a spillway near the dam. *McCormick*, 673 N.E.2d at 832. Paul had leased dock space at the Marina on Morse Reservoir where he kept a boat. *Id*. Paul's widow, Nora, in her capacity as the personal representative of Paul's estate, sued the Water Company, which owned the reservoir, and the State, which regulates various matters relating to it. *Id*. The trial court granted summary judgment in favor of both defendants, and Nora appealed. *Id*. She argued that Paul was a public invitee of the Water Company at the time of the accident. *Id*. The Water Company countered that he was a licensee. *Id*.

Upon review, we noted that a public invitee is a person who is "*invited*" to enter or to remain on another's land whereas a licensee is privileged to enter or to remain on the land by virtue of "*permission*" or sufferance. *Id*. at 836 (emphases in original). "Thus, in the determination of whether an individual is an invitee or a licensee, the distinction between the terms "invitation" and "permission" becomes critical." *Id*. We noted that the comments to the Restatement (Second) of Torts § 330 provide as follows:

> c. *Consent and toleration*. The word "consent," or "permission," indicates that the possessor is in fact willing that the other shall enter or remain on the land, or that his conduct is such as to give the other reason to believe that he is willing that he shall enter, if he desires to do so.

*Id*. at 836 (emphasis in original). We also observed that the comments to the Restatement (Second) of Torts § 332 clarify the distinction between invitation and permission:

> b. *Invitation and permission*. Although invitation does not in itself establish the status of an invitee, it is essential to it. An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter

6

if they desire to do so.

\* \* \* \* \* \*

> Mere permission, as distinguished from invitation, is sufficient to make the
> visitor a licensee, as stated in § 330; but it does not make him an invitee…

*Id*. at 836-37 (emphasis in original). We further noted that the comments to this section of

the Restatement clarify what is meant by land held open to the public for the purposes of the

public invitee:

> d. *Land held open to the public*. Where land is held open to the public, there is
> an invitation to the public to enter for the purpose for which it is held open.
> Any member of the public who enters for that purpose is an invitee...
>
> \* \* \* \* \* \*
>
> It is not enough, to hold land open to the public, that the public at large, or any
> considerable number of persons, are permitted to enter at will upon the land for
> their own purposes. *As in other instances of invitation, there must be some
> inducement or encouragement to enter, some conduct indicating that the
> premises are provided and intended for public entry and use, and that the
> public will not merely be tolerated, but is expected and desired to come*. When
> a landowner tacitly permits the boys of the town to play ball on his vacant lot
> they are licensees only; but if he installs playground equipment and posts a
> sign saying that the lot is open free to all children, there is then a public
> invitation, and those who enter in response to it are invitees.

*Id*. at 837 (citing Restatement (Second) of Torts § 332) (emphasis in original). As such, we

concluded that "[t]he decisive factor with regard to whether the possessor had extended an

'invitation' or 'permission' is the interpretation that a reasonable man would put upon the

possessor's words and actions given all of the surrounding circumstances." *Id*.

Applying this conclusion to the record on appeal, we concluded that even upon

construing the evidence in the light most favorable to Paul, no reasonable person could

conclude that the Water Company extended an invitation to Paul to use Morse Reservoir. *Id*.

Specifically, we found that while the evidence supported the inference that the Water

7

Company was willing to allow people to use Morse Reservoir, Nora produced no evidence from which one could conclude that the Water Company, desired, induced, encouraged, or expected the decedent to enter the reservoir. *Id.* As such, we concluded that the evidence most favorable to Paul established that the Water Company merely gave him permission to enter the reservoir, and that this mere permission made Paul a licensee. *Id.*; *see also Moore v. Greensburg H.S.*, 773 N.E.2d 367 (Ind. Ct. App. 2002) (holding that parent injured while decorating high school for post-prom party on volunteer basis was on school premises as licensee, not invitee).

## 2. Application of Relevant Authority to Instant Matter

In arguing that the trial court erroneously determined that he was a licensee on Smith's property at the time of the incident, Mohr argues that he was a public invitee on Smith's property because Smith had previously allowed members of the public to enter her land to view or access the lake. Mohr argues that Smith's act of hanging a hammock between two trees and placing a bench on the dock on her property constituted inducement or encouragement for the public to enter. In support of this argument, Mohr points to the fact that Smith was aware that members of the public occasionally entered her land for the purpose of viewing or accessing the lake, but did not post a "No Trespassing" sign anywhere on her property. Smith acknowledges that she was aware that members of the public would occasionally enter her land and that she had not posted any "No Trespassing" signs on her property. Smith asserts, however, that the hammock and the bench on the dock were not sufficient to create an invitation for the public to enter her property and that her actions can,

8

at most, be construed as an indication of permission for the public to enter her property rather than an invitation for the public to enter her property.

Upon review, we conclude that the designated evidence most favorable to Mohr demonstrates that Smith's act of placing a hammock and a bench on her property overlooking the lake was insufficient to constitute an invitation for the public to enter Smith's property. Although Smith was aware that members of the public would occasionally enter her property to view or access the lake, Smith did not invite the public to enter her land. Nothing in the record suggests that Smith desired, induced, encouraged, or expected the public to enter her property. She merely permitted the public to occasionally enter her land, so long as they did not cause any trouble. Again, mere permission, as distinguished from an invitation, is insufficient to transform a licensee into an invitee. *See McCormick*, 673 N.E.2d at 837. Thus, the trial court properly determined that Mohr was, at most, a licensee on Smith's property at the time of the incident.

Furthermore, with regard to Mohr specifically, the designated evidence most favorable to Mohr again indicates that Mohr was, at most, a licensee on Smith's property. Mohr admitted that prior to the night the incident occurred, he had only been to Smith's property one other time—the night before when he and Kastner entered the property late in the evening, well after dark, while walking together along Esplanade Road. On both the night before and the night of the incident, Mohr and Kastner came to Smith's property while walking along Esplanade Road and decided to sit in the hammock. Mohr knew that the property where the hammock was located was not owned by Grace College. Mohr indicated

9

that he knew that the property on which the hammock was located was in a residential area, but did not know who owned the property. Mohr did not know Smith and neither he nor Kastner had been granted permission or invited to enter the property. In addition, Mohr admitted that he had not, in any way, been induced or encouraged to come onto Smith's property. Again, the trial court properly determined that, at the time of the incident, Mohr was, at most, a licensee on Smith's property.

## C. Smith's Alleged Breach of Duty

Having concluded that the trial court properly determined that Mohr was, at most, a licensee on Smith's property when the incident occurred, we must next determine whether the trial court properly determined, as a matter of law, that Smith did not violate any duty owed to Mohr. Mohr argues that the trial court erred in granting summary judgment in favor of Smith because "there is at least a genuine issue of material fact precluding summary judgment as to whether Smith violated the appropriate duty owed to [Mohr]." Appellant's App. p. 24. Again, the question of whether a duty of care has been breached "is only a question of law when the facts are undisputed and only one inference can be drawn from them." *Winfrey*, 963 N.E.2d at 614.

"A landowner's only duties to a licensee are to refrain from willfully and wantonly injuring the licensee and to warn the licensee of any latent danger on the premises of which the owner has knowledge." *Rhoades*, 839 N.E.2d at 794.

> Wanton and willful conduct consists of either: (1) an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time; or (2) an omission or failure to act when the actor has actual knowledge of the natural

10

and probable consequence of injury and has opportunity to avoid that risk. *Witham v. Norfolk and Western Railway Company*, 561 N.E.2d 484, 486 (Ind. 1990), *reh'g denied*; *Nesvig v. Town of Porter*, 668 N.E.2d 1276, 1283 (Ind. Ct. App. 1996). This conduct is comprised of two elements: (1) the defendant's knowledge of an impending danger or consciousness of misconduct calculated to result in probable injury; and (2) the defendant's conduct must have exhibited an indifference to the consequences of the act. *Witham* at 486; *Nesvig* at 1283.

Willful or wanton misconduct is "so grossly deviant from everyday standards that the licensee or trespasser cannot be expected to anticipate it." *Harper v. Kampschaefer*, 549 N.E.2d 1067, 1070 (Ind. Ct. App. 1990), *trans. denied*. Willfulness cannot exist without purpose or design. *Koop v. Bailey*, 502 N.E.2d 116, 118 (Ind. Ct. App. 1986). Known probability of injury is the key to the consideration of wantonness. *Nesvig* at 1284.

*Taylor*, 713 N.E.2d at 882. "Latent is defined as concealed or dormant." *Rhoades*, 839 N.E.2d at 794 (citing BLACK'S LAW DICTIONARY 898 (8th ed. 2004)). "A showing by the licensee of mere negligence on the part of the land owner will not be enough to insure him recovery." *Barbre v. Indpls. Water Co.*, 400 N.E.2d 1142, 1146 (Ind. Ct. App. 1980); *see also Gaboury v. Ireland Rd. Grace Brethren, Inc.*, 446 N.E.2d 1310, 1314-15 (Ind. 1983).

In arguing that Smith breached the duty owed to him, Mohr does not allege that Smith acted willfully or wantonly. Instead, Mohr alleges that Smith failed to warn him of a latent danger of which she had knowledge. In making this argument, Mohr claims that "[t]he fact that the tree was dead and decaying was a latent condition with respect to [Mohr]" and that Smith failed to warn him of the latent danger of the tree. Appellant's App. p. 27. The undisputed designated evidence, however, fails to establish that Smith knew of the latent danger allegedly posed by the tree.

The designated evidence establishes that Smith's son, Brendt, "topped" the tree in question by cutting off most of the tree's branches. Some of the branches that Brendt cut off

11

appeared to be dead, while others appeared to be alive. Brendt discussed this course of action with Smith. Smith agreed with this course of action because she did not think that the tree looked healthy but, rather, dead because there was very little growth on the tree. However, Smith did not assume that the tree was actually dead because of a prior experience with another tree that had appeared dead but grew out to be full and beautiful after Smith hired a tree service to "top" the tree. Smith and Brendt felt that the tree was "ugly" and would look nicer if the branches, both those that appeared to be dead and those that appeared to be alive, were cut off.

Smith did not hire an expert to inspect the tree to see if it could support the hammock. However, Smith believed that the tree could support the hammock. The hammock was used by Smith's children and grandchildren. It is reasonable to infer that Smith would not have permitted her children and grandchildren to use the hammock if she had not believed the tree could safely support the hammock. In addition, the parties designated the statements of two individuals who lived near Smith on Esplanade Road, both of whom stated that they did not believe that the hammock or the trees supporting the hammock posed a danger to anyone using the hammock.

Further, in an affidavit designated by Smith, International Society of Arboriculture ("ISA") certified arborist Russell Hodge averred that he had been involved in the tree care industry for thirty-one years and that through his education, experience and training, he is familiar with commonly-accepted practices within the tree care industry. While Hodge generally disagrees, in his experience, many people, including some tree service providers,

"believe that removing the upper half of trees (commonly known as "topping") makes trees safer by reducing the risk of the tree falling or shedding limbs." Appellant's App. p. 91. Hodge stated that "the average tree service provider also commonly tops trees to make them more aesthetically pleasing." Appellant's App. p. 91. Hodge averred that in his experience, while many non-certified tree service providers do not fully understand the consequences of "topping" trees, most recommend "'topping' trees to reduce the risk of the tree falling or shedding limbs, or to improve the tree's physical appearance." Appellant's App. p. 91.

Hodge also averred that through his education, experience, and training, he has encountered crown root rot, and is familiar with indications of crown root rot as well as the effects of crown root rot on trees. In his experience, crown root rot is "commonly not observable from above the ground" and even trained industry professionals often fail to identify a tree suffering from crown root rot. Appellant's App. p. 91. Hodge opined that after examining the tree in question, he believes that the tree was affected by crown root rot; that the failure in the tree that caused it to fall occurred with its roots, below the ground; and that the tree did not fall because of any above-ground or observable condition. Hodge further averred that although the tree in question was dead, it had no visible signs that would lead him to believe that it was inherently dangerous.

In addition, Hodge averred that "after having worked extensively in the tree industry, [he does] not believe that unhealthy or dead trees are categorically unsafe for supporting a hammock." Appellant's App. p. 92. Hodge averred that the type of bolts used to secure the hammock were appropriate means to do so and that he did not believe that the use of these

13

bolts harmed or weakened the tree or contributed to its crown root rot. Hodge further averred that after examining the tree in question as well as photographs of the incident, he believed "that the force of two individuals sitting in the hammock pulled the [t]ree, with its weakened root structure, over onto these individuals." Appellant's App. p. 92.

In an affidavit designated by Mohr, ISA certified master arborist Mark Duntemann[1] averred that the tree in question was in imminent danger of failing, as it had numerous defects that indicated significant health and structural issues that were observable to the property owner. Duntemann opined that the deteriorating condition of the tree was visually obvious to Smith and Brendt and that Brendt altered the function and the capability of the tree by "topping" the tree and redefining its use as a post to support the hammock. Duntemann further opined that the tree was in imminent danger of failing, that the "topping" of the tree contributed to the danger that the tree would fail, and that the most appropriate mitigation for the tree was removal. However, while Duntemann averred that it was his opinion that Smith understood that professional arborists could be retained to mitigate tree issues, Duntemann did not aver that Smith knew that there was a latent danger that the tree would fall over if anyone were to sit in the hammock.

Again, negligence on Smith's part is not enough to establish breach of any duty owed to Mohr. *Gaboury*, 446 N.E.2d at 1314-15; *Barbre*, 400 N.E.2d at 1146. Rather, Mohr was required to provide designated evidence that demonstrated that Smith had actual knowledge of a latent danger, *i.e.*, that the tree was in imminent danger of falling if one was to use the

---

[1] Portions of Duntemann's affidavit were subsequently stricken by the trial court. We do not rely on any of these portions in the instant opinion.

14

hammock, and failed to warn him of said danger. *See Rhoades*, 839 N.E.2d at 794 (providing that a landowner only has a duty to warn the licensee of any latent danger on the premises *of which the owner has knowledge*). Mohr failed to do so.

As such, upon review, we conclude that Mohr failed to designate any evidence that Smith had knowledge of the allegedly latent danger posed by the tree. As such, as a matter of law, Smith cannot be said to have failed to warn Mohr of a latent danger on her property. Because undisputed evidence leads only to the inference that Smith did not have knowledge of the allegedly latent danger posed by the tree to which the hammock was attached, the trial court properly determined, as a matter of law, that Smith did not breach any duty owed to Mohr. Accordingly, the award of summary judgment to Smith was proper. Furthermore, having determined that Smith was entitled to summary judgment on the ground that the designated evidence does not raise a question of material fact as to whether Smith breached any duty owed to Mohr, we need not consider Mohr's challenge to the applicability of the Indiana Recreational Use Statute to the instant matter.

The judgment of the trial court is affirmed.

MATHIAS, J., and PYLE, concur.