## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 28 2019, 7:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan H. Babb
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

William J. Beggs
Ryan M. Heeb
Bunger & Robertson
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ashley Gill,

*Appellant-Plaintiff,*

v.

Thomas Haggerty and Cathy Haggerty,

*Appellee-Defendants*

March 28, 2019

Court of Appeals Case No. 18A-CT-953

Appeal from the Monroe Circuit Court

The Honorable Dena A. Martin, Special Judge

Trial Court Cause No. 53C06-1612-CT-2648

**May, Judge.**

[1]     Ashley Gill appeals summary judgment in favor of Thomas ("Thomas") and Cathy ("Cathy") Haggerty (collectively, "the Haggertys"). As genuine issues of material fact exist, we reverse and remand.

# Facts and Procedural History

[2] On April 9, 2016, Gill and several friends decided to visit a well-known treehouse located at the Haggertys' residence. This multi-storied treehouse had been featured in a local paper and was, at one point, a focal point for a high school folklore class. However, it had not been in use for many years. Neither Gill nor her friends personally knew the Haggertys.

[3] Two of Gill's friends, Griffin Meved and Chance Boney, approached the Haggerty residence to request permission to explore the treehouse. Thomas answered the door but told the group he "just wasn't prepared for anything . . . and come back in an hour or so[.]" (App. Vol. II at 93.) The group left and returned about an hour later. Thomas provided a ladder for the group.[1] Thomas held the ladder so the group could ascend. Thomas warned them against going to the very top of the treehouse. (*See id.* at 57.)

[4] Neither Thomas nor Cathy had been up in the treehouse for several years. They were unaware of any structural damage to the treehouse. Gill did not observe any damage to the treehouse. However, after about ten minutes, Gill fell through the floor of the treehouse down to the ground, a distance of approximately fifteen feet. Gill broke her right leg and left ankle.

[5] On December 23, 2016, Gill filed a complaint against the Haggertys alleging they had been negligent and were the cause of her injuries. The Haggertys

---

[1] There are inconsistencies in the designated evidence as to whether Thomas told the group where to locate the ladder or got the ladder for them and whether he or they placed the ladder against the tree.

answered the complaint, denying the negligence allegations. On October 17, 2017, the Haggertys filed a motion for summary judgment, arguing Gill had not been an invitee but rather a licensee and, therefore, they did not breach any duty owed to Gill as they had not acted willfully or wantonly in a fashion to harm Gill and they had not failed to warn Gill of any known dangers in the treehouse. On December 18, 2017, Gill responded to the motion for summary judgment, claiming she was an invitee and the Haggertys owed her a reasonable duty of care. Alternatively, Gill argued even if she had been only a licensee, the Haggertys had acted negligently in allowing her access to the treehouse when it had not been inspected in several years. Gill argued, at the very least, a genuine issue of material fact existed as to her status as an invitee or licensee.

On February 16, 2018, the trial court held a hearing on the motion for summary judgment. The hearing consisted of only argument by the parties' counsel. On February 20, 2018, the trial court granted the Haggertys' motion for summary judgment without entering any findings of fact or conclusions of law. On March 20, 2018, Gill filed a motion to correct error, which the trial court denied.

# Discussion and Decision

When reviewing the grant of summary judgment, we apply the same standard the trial court does. *Rogier v. Am. Testing & Eng'g Corp.,* 734 N.E.2d 606, 613 (Ind. Ct. App. 2000), *trans. denied*. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to

judgment as a matter of law. Ind. Trial Rule 56(C). We do not weigh the evidence; rather, we consider the facts in the light most favorable to the nonmovant. *Rogier,* 734 N.E.2d at 613.

[8] The tort of negligence is composed of three elements: "(1) a duty owed by the defendant to conform its conduct to a standard of care necessitated by its relationship with the [plaintiff]; (2) a breach of that duty; and (3) an injury proximately caused by the breach." *McCormick v. State,* 673 N.E.2d 829, 837 (Ind. Ct. App. 1996). Summary judgment is rarely appropriate in negligence actions. *Id.* at 832. However, issues of duty are questions of law for the court and may be appropriate for disposition by summary judgment. *Id.*

[9] A person entering the land of another comes onto the land as an invitee, a licensee, or a trespasser. *Rhoades v. Heritage Investments, LLC,* 839 N.E.2d 788, 791 (Ind. Ct. App. 2005), *reh'g denied, trans. denied.* The person's status on the land defines the nature of the duty the landowner owes to the visitor. *Id.*

> A landowner owes the highest duty of care to an invitee, that duty being to exercise reasonable care for the invitee's protection while he is on the premises. Landowners owe a licensee the duty to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril. This includes the duty to warn a licensee of any latent danger on the premises of which the landowner has knowledge. Finally, the duty owed to a trespasser is the duty to merely refrain from wantonly or willfully injuring him after discovering his presence.

*Id.* (internal citations omitted). Thus, the first step in resolving a premises liability case is to determine the plaintiff's status as a visitor. *Id.* The visitor

status then defines the duty owed from the landowner to the visitor. *Id.* Generally, "[a] person's status on the land, along with the duty owed, is a matter left for determination by the trial court, not the jury." *Id.* However, that status may "turn on factual issues the must be resolved by the trier of fact." *Kopczynski v. Barger*, 887 N.E.2d 928, 931 (Ind. 2008).

[10]    Here, the uncontroverted, designated evidence shows Gill and her group of friends wished to visit the treehouse. Without invitation, at least two of the friends approached the Haggertys' door and requested permission to see the treehouse. Thomas told them he "just wasn't prepared for anything . . . and come back in an hour or so[.]" (App. Vol. II at 93.) The group did so. At that time, Thomas assisted with the ladder by holding it for the group to climb. Thomas directed the group to avoid the third floor.

[11]    On appeal, Gill argues Thomas' actions constituted an implied invitation, such that Gill's status was that of an invitee. The Haggertys argue Gill and her friends were there merely to satisfy their curiosity and were only permitted on the property, such that Gill was a licensee. The Haggertys claim Gill's deposition, wherein she states she had not received an invitation, proves she was not an invitee. The parties, substantially, cite the same cases to support their divergent arguments.

[12]    In *Burrell v. Meads*, 569 N.E.2d 637 (Ind. 1991), *reh'g denied*, Meads asked Burrell to help him in his garage with a project. *Id*. at 638. The two commonly did this together. *Id*. While there, Burrell was injured. *Id*. at 639. The Court

held that when "a landowner induces a social guest to enter his land by express or reasonably implied invitation . . . the landowner leads that guest . . . to believe that the land has been prepared for his safety." *Id*. at 643. The Court held Burrell was a social guest, a type of invitee, and was owed a reasonable duty of care. *Id*. at 643-44. Unlike Burrell, Gill did not have a prior relationship with the Haggertys and did not receive an express invitation to be on the property.

[13] In *Dunifon v. Iovino*, 665 N.E.2d 51 (Ind. Ct. App. 1996), *reh'g denied, trans. denied*, the grand-daughter of the landowner, Dunifon, invited several of her high school friends to the family-owned lake house for the weekend. *Id*. at 54. Iovino was not specifically invited but came with other invitees. *Id*. Iovino was given food and drink and included in the activities on the lake. *Id*. Later that day, Iovino dove from the pier into shallow water and broke his neck. *Id*. Iovino was paralyzed and sued the Dunifons for negligence in not warning him about the shallow water. *Id*. The Dunifons argued the trial court erred in determining Iovino was an invitee but that, regardless, they had not breached their duty to him. *Id*. at 55. A panel of this court held that the facts surrounding Iovino's presence at the lake house -- *i.e.*, the grand-daughter did not request Iovino leave and did not confront him about his lack of invitation, she engaged in pleasantries, and she treated Iovino as a social guest -- indicated a "reasonably implied invitation" had been given to Iovino; thus, Iovino was an invitee, and the Dunifons owed a reasonable duty of care. *Id*. at 56. Like Iovino, Gill was not issued an express invitation, but she was treated cordially

and was interacted with while on the Haggerty property.  However, the interaction was not as extensive as that extended to Iovino.

[14]    In *Moore v. Greensburg High School*, 773 N.E.2d 367 (Ind. Ct. App. 2002), Moore, a parent, volunteered to decorate the school for the after-prom party.  *Id*. at 368.  He was injured while decorating.  *Id*. at 369.  A panel of this court held that while the school permitted the parents to come onto the property and decorate, the school had merely permitted them entry and had not invited them to do so; therefore, the parents' status was that of licensees.  *Id*. at 370-71.  While the school provided the keys, it did not supervise the usage of them.  *Id*. at 369.  Here, Thomas provided the ladder, supervised the usage of it, and supervised the group while they were on the property.

[15]    In *Rhoades*, Rhoades and his friend Maier were mall-walkers.  *Rhoades*, 839 N.E.2d at 790.  Maier had a friend, Moll, who was renovating a nearby building that Maier wished to visit.  *Id*.  As Rhoades had driven that day, Maier asked Rhoades to take him to the building site.  *Id*.  When they reached the building, except a brief introduction, Moll and Rhoades did not interact.  *Id*.  Rhoades followed the other two men around the building, noticing it was under construction and not well-lit.  *Id*.  When they went upstairs, Rhoades became apprehensive and decided to go back downstairs.  *Id*.  On his way down, he missed a step, fell, and suffered injury.  *Id*. at 791.  Because Rhoades was not invited to the property and had no other reason to be there except to accompany Maier, a panel of this court held that Rhoades was only a licensee.  *Id*. at 794.  While Gill did not approach the front door and receive an invitation

to return from Thomas, the designated evidence does not indicate Thomas interacted more or less with any one member of the group when they returned after an hour.

[16] In *Mohr v. Virginia B. Smith Revocable Tr.*, 2 N.E.3d 50 (Ind. Ct. App. 2014), *trans. denied,* the landowner, Smith, had a hammock hanging on her property. *Id*. at 53. Mohr and his friend, late at night, came to her property, without knowing her and without her invitation or permission, and sat in the hammock. *Id*. One of the trees supporting the hammock broke and fell on Mohr and his friend. *Id*. The friend died and Mohr suffered injury. *Id*. Mohr argued he and his friend were public invitees because Smith had allowed the public to use the hammock. *Id*. at 56. A panel of this court held that although the hammock was not made inaccessible to passers-by, Smith did not encourage strangers to use the hammock, did not expect people to make use of her hammock, and "did not invite the public to enter her land." *Id*. Therefore, "Mohr was, at most, a licensee on Smith's property." *Id*. at 57. *Mohr* is distinguishable from the case herein because Mohr used Smith's hammock without her knowledge. Thomas not only knew Gill was going to be in the treehouse, but he also had time to make it ready for guests by requesting the group return in an hour. Additionally, Thomas assisted with the ladder.

[17] The Haggertys argue Gill was only a licensee. In support of their contention, the Haggertys argue Thomas did not desire Gill or her friends to be on the property but only permitted them entrance. They contend Thomas' assistance with the ladder did not constitute an invitation, citing it was no more than

"provision of the door . . . used by the plaintiff in *Rhoades* . . ., or the placing a hammock on the property as in *Mohr*, or the provision of keys and scaffolding in *Moore*."[2] (Br. of Appellees at 17.)

[18] Gill argues that, notwithstanding her deposition testimony wherein she asserted she was not invited to the property, her status is that of an invitee because a reasonable person would interpret Thomas' actions and words as an implied invitation. Gill argues that Thomas did not just permit the group to go to the treehouse unattended; rather, Thomas requested they return after an hour, assisted the group with the ladder, and told them where to go in the treehouse. Gill argues Thomas gave the impression that he "desired her to enter onto the premises for the purpose of going up into his well-known treehouse[.]" (Br. of Appellant at 14.) At the very least, Gill argues her status on the land is a genuine issue of material fact to be determined by the fact-finder.

[19] The record presented to us, viewed *de novo*, demonstrates a genuine issue of material fact exists as to Gill's status on the land. She did not have an invitation issued to her—prior to her arrival at the property nor explicitly upon arrival. However, Thomas' actions after her arrival may have given a

---

[2] The Haggertys also cite *Gilpin v. Ivy Tech State College*, 864 N.E.2d 399 (Ind. Ct. App. 2007), but that case presented a different issue than we have herein. In *Gilpin*, the school was held open to the public and the issue was whether Gilpin's use or desired use of the land was the reason for which the land was held open. If Gilpin's use had been for that reason, he would have been a public invitee. Here, it has not been determined that the treehouse was held open to the public. Nevertheless, even if that determination were made, Gill's use of the land would have been for the reason it was being held open and she would have been a public invitee. Thus, *Gilpin* is not applicable here.

The Haggertys also cite *Androusky v. Walter*, 970 N.E.2d 687 (Ind. Ct. App. 2012), but it dealt with a landowner who initially forbade entry and then granted only limited access. At the time of the injury, the visitor's status was definitively no more than a licensee. That is not the case here.

reasonable indication he desired Gill's presence on his land to see his treehouse. *See Dunifon*, 665 N.E.2d at 56 (a visitor "under a reasonably implied invitation" denotes a status of social guest the same as a visitor with an express invitation). The group's purported reason for visiting the treehouse was for their own amusement, but on their arrival, Thomas requested and was given time to prepare for their presence. Thomas continued the interaction by holding the ladder and directing the group's actions while in the treehouse. Nevertheless, Gill acknowledges she was not invited onto the property. Accordingly, we reverse the trial court's grant of summary judgment in favor of the Haggertys and remand for further proceedings.

# Conclusion

As a genuine issue of material fact exists as to Gill's status on the Haggertys' land, we reverse the summary judgment and remand for further proceedings.

Reversed and remanded.

Baker, J., and Robb, J., concur.